# Lide *et al. v.* Parker's Executor.

*Creditor's Bill in Equity against Fraudulent Grantee.*

1. *When creditor without lien may come into equity.*—The statute which authorizes a creditor by simple contract only, without a lien, to come into equity to reach and subject property fraudulently conveyed by his debtor (Code of 1876, § 3886), applies only to property situated here, and has no extra-territorial operation.

2. *Same; jurisdiction of equity as to foreign lands.*—A foreign creditor by simple contract, having no lien, can not maintain a bill in equity here, against the voluntary grantees of his deceased foreign debtor, to make them account for foreign lands fraudulently conveyed by the debtor in his life-time. The power of a court of equity to compel the performance of its decrees *in personam*, although the lands involved in the litigation may not be within its jurisdiction, do not extend to such a case.

3. *Liability of lands for debts, at common law, and by foreign statute.*—By the old common law of England, lands could not be subjected by legal process to the payment of simple debts ; and the courts of Alabama can not judicially know how far this principle has been changed by statute in Mississippi.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 26th June, 1871, by John Parker, since deceased, and revived in the name of his executor on his death pending the suit, against Mrs. Laura A. M. Lide and her husband, Mrs. Addie B. White and her husband, and Mrs. Julia A. Thomas and her husband. Mrs. Thomas and her husband resided in Lauderdale county, Mis-

sissippi; and Mrs. Thomas, before her last marriage, was the widow of Isaac S. O. G. Greer, deceased, who had lived and died in said county of Lauderdale. Mrs. Lide and Mrs. White were the children of Jere H. Brown, deceased, who lived and died in Sumter county, Alabama, where also they and their husbands resided. Prior to 1861, but at what precise time does not appear, said Isaac Greer became indebted to said John Parker, the complainant in this suit, for borrowed money; and on the 1st March, 1863, in renewal and extension of this indebtedness, he executed to said Parker his promissory note for $9,223.12, payable twelve months after date. On this note a partial payment of $500 was made on the 22d March, 1866, and another on the 24th April, 1867, of $300; and the balance was alleged to be due and unpaid when the bill in this case was filed. On the 1st September, 1866, said Greer also borrowed a large sum of money from said Jere H. Brown, to whom he executed his two promissory notes, one for $5,000, and the other for $10,000, payable respectively six and twelve months after date; and to secure the payment of said notes, he executed a deed of trust to J. C. Bogle as trustee, conveying a large tract of land in Lauderdale county, Mississippi, with other property, real and personal, authorizing said trustee to advertise and sell the property, if the two notes were not paid by the 1st March, 1869, and to appropriate the proceeds to the payment of the entire amount then due, principal and interest. The bill alleged that this debt was contracted in Alabama, and that the notes and deed were also executed here, though the property conveyed was in Mississippi. These notes, and the deed of trust, were afterwards transferred by said Brown, by voluntary assignment, as a gift, to his two daughters, Mrs. Lide and Mrs. White; and default being made in the payment of the notes, they united with the trustee in filing a bill in equity to foreclose the deed of trust. The bill was filed on the 29th day of July, 1869, in the Circuit Court of Lauderdale county, Mississippi, sitting as a court of equity; and the widow and children of said Greer were made defendants, together with his administrator, John McInnis. In his answer to said bill, the administrator claimed that the notes were entitled to a credit of $6,377.25; and the credit, or an abatement of the amount due on the notes, was allowed. A reference to the master having been ordered, he reported the amount due on the notes, on the 1st February, 1870, at $8,975; and his report was confirmed by the court. A sale of the lands having been ordered by the court, Mrs. Lide and Mrs. White became the purchasers, for the amount of the decree in their favor, less the amount brought by the sale of the other prop-

erty, which was paid to them by said trustee; and the sale
was regularly reported and confirmed, and titles made to the
purchasers under the order of the court.

The bill in this case alleged that, at the time of this trans-
action between Greer and Brown, Greer was largely indebted
to other creditors besides complainant, and his embarrass-
ment was well known to Brown; that the deed of trust to
Bogle conveyed substantially all his property, which was
worth much more than the amount of the secured debt; that
the sum borrowed from Brown by Greer was only $8,622.95,
and the fictitious sum of $15,000 was purposely inserted, in
order to protect Greer's property from the claims of other
creditors; and that the transaction was intended to hinder,
delay, and defraud the other creditors of Greer. The prayer
of the bill was, that the said deed of trust might be declared
fraudulent and void as against the complainant; that the
purchase by Mrs. Lide and Mrs. White, and their title de-
rived under the deed of trust, might also be declared void,
or held to enure to the benefit of the complainant; that they
might also be made to account for all moneys which they
had received under the deed of trust, and for the rents and
profits of the lands while in their possession; "that the said
lands be subjected to, and sold for complainant's debt on
Greer;" and the general prayer was added, for other and
further relief. The widow of said Greer was made a defend-
ant to the bill on account of her dower interest in the lands,
which was controverted in the Mississippi suit, and settled
by compromise between the parties.

A decree *pro confesso* was entered against Mrs. Thomas
and her husband. The other defendants filed a joint de-
murrer to the bill, for want of equity, because the complain-
ant had not exhausted his legal remedies, and because the
lands in Mississippi were beyond the jurisdiction of the
court. The chancellor overruled the demurrer, holding that
the bill presented a case for equitable relief, and that if the
transaction between Greer and Brown should, on the proof,
be found fraudulent as against Greer's creditors, the court
might, by a personal decree against the defendants, compel
them to account for the lands in Mississippi; and on final
hearing, on pleadings and proof, deciding that the transac-
tion was fraudulent, he rendered a decree for the complain-
ant, in accordance with the prayer of the bill. The decree
on the demurrer, and the final decree, are now assigned as
error. It is unnecessary to notice the matters of defense
set up in the answers, or the evdence adduced by the
parties as to the *bona fides* and validity of the deed of trust,

W. G. LITTLE, and THOS. B. WETMORE, for appellant.—As a proceeding *in rem*, the bill can not be maintained, because the lands lie beyond the jurisdiction of the court. The complainant's remedy against the lands can only be pursued in the courts of Mississippi.—Story's Conflict of Laws, §§ 551, 555. The court in Mississippi had jurisdiction of the lands, and all the proper parties were before the court. Its proceedings were regular, and they can not be impeached, or annulled, as this bill attempts to do. As a bill to reach and subject property fraudulently conveyed by a debtor, under the Alabama statute (Code of 1876, § 3886), the bill is wanting in equity : in the first place, because the property is beyond the jurisdiction of the court, and the statute can have no extra-territorial operation ; and in the second place, because a deficiency of legal assets is neither proved nor averred.—20 Ala. 662, 817 ; 30 Ala. 478 ; 31 Ala. 172 ; 51 Ala. 544. As a proceeding *in personam*, the suit can not be sustained, because a personal decree or judgment can not be rendered against married women.—1 Daniel's Ch. Pr. 146, 3d Perkins' edition ; *Ravisies v. Stoddart*, 32 Ala. 600 ; *Cowles v. Marks*, 53 Ala. 499.

A. W. COCKRELL, *contra*.—As to jurisdiction of the court, see the cases collected in Robinson's Practice, vol. 1, p. 336, top ; also, *Halfman v. Ellison*, 51 Ala. 543.

MANNING, J.—The bill in this cause was filed by Parker, a creditor of the late Isaac O. G. Greer, against appellants, Mrs. Lide and Mrs. White, and their husbands, of Sumter county, Alabama. The wives became purchasers of the lands in controversy, situated in Mississippi, at a sale made by order of a Chancery Court in that State, under a trust-deed executed by Greer, as security, to their father, Jere H. Brown, late of Sumter county, Alabama, deceased, for money borrowed by Greer of him ; which debt and trust-deed he gave to them, his daughters. The lands were bought with the debt; and it is not alleged that they were bid off at less than their value at that time, or that Mrs. Lide and Mrs. White received upon the debt, in property and money, more than was actually due, for the principal and interest of the amount lent by Brown to Greer.

It is not necessary for us to inquire into the intent—alleged on one side, and denied on the other, to have been fraudulent—with which the transaction between Greer and Brown was entered into by them. Whether the fact that Greer's promissory notes to Brown, and trust-deed to Bogle to secure payment of them, were made for a larger amount

than the sum Greer actually obtained from Brown and interest thereon, was the result of a scheme of one of them, concurred in by the other, to protect Greer's property from other creditors, or was due only to the failure to get in from debtors of Brown some of the money he agreed to lend to Greer, and which the latter therefore did not obtain, is unimportant, in the view we take of this case.

It is clear that the property, which this trust-deed embraced, consisting chiefly of lands, was situated in Lauderdale county, in the State of Mississippi; and that Greer resided in that county, and died there; and that the administration of his estate was there lawfully granted to one John McInnis. Though there are allegations in the bill that Greer was indebted to complainant, Parker, and other creditors, and was much embarrassed at the time when the trust-deed was made, and that it contained substantially all of his property; it is not averred that his estate was insolvent at the time of, or after his death; nor that complainant had brought suit at law against him, or his administrator, for the debt due from him, and had prosecuted it to judgment, or had even presented the note to the administrator as a claim against Greer's estate. Nor is any administrator of Greer made a party to this suit. It is hence apparent, that Parker, who was a creditor by simple contract only, and without any lien, had not put himself in a condition to set up any sort of a claim to the aid of a court of equity to enforce the payment of the debt to him, unless he was entitled to it by virtue of some statute.—*Sanders v. Watson*, 14 Ala. 200; *Halfmann's Executors v. Ellison*, 51 Ala. 544; 1 Brickell's Dig. 655.

The only statute that can be supposed to aid the complainant, is contained in section 3886 (3446) of the Code of 1876: "A creditor without a lien may file a bill in chancery, to subject to the payment of his debt any *property* which has been fraudulently transferred, or attempted to be fraudulently conveyed, by his debtor." But, evidently, the *property* here referred to is property within the State of Alabama. It cannot be presumed that the legislature meant to give to its enactment, if it could do so, an extra-territorial operation, or to authorize courts of equity here, through their power over parties within their jurisdiction, to appropriate real and personal property situated in another State, to the payment of simple-contracts creditors in Alabama or elsewhere.

By the old common law of England, lands were not subject at all to be sold to pay simple-contract debts. Every State is entitled to have such a policy of partial or total exemptions, in matters of this sort, as it may choose to establish;

and that policy, whatever it may be (and that of Mississippi cannot be judicially known by the courts of another State, and is not shown by allegations in this cause), can no more be interfered with, or administered through decrees, *agere in personam*, of alien courts, that it can be prescribed by an alien legislature. It is a misapplication of the doctrine of the case of *Penn v. Lord Baltimore* (1 Vesey, 444), and of other cases relating to the specific performance of contracts concerning lands not within the jurisdiction of the court decreeing it, and of cases in which the plaintiff has been defrauded out of his *title* to lands so situated by the defendant in a cause, for a court in Alabama, at the instance of a mere creditor who never had any title to, or lien upon the land, once belonging to his debtor in another jurisdiction, nor ever instituted any proceedings there against it, to undertake to subject to the payment of the debt to this creditor such real estate within the dominion of another sovereign, by a decree in any form whatever.

It follows, that the decree of the chancellor must be reversed, and the bill be here dismissed ; and the appellee must pay the costs in this court, and in the Chancery Court.