# Rose *v*. Gibson.

*Bill in Equity to establish Resulting Trust in Land.*

1. *Resulting trust; how created.*—Where a man buys land in the name of another, and pays the consideration-money, in the absence of all rebutting circumstances, the land will be held by the grantee in trust for him who pays the consideration-money. This trust results, by mere presumption of law, without any proof of the actual intention of the parties, from the fact that one pays the consideration-money, while the other receives the title.

[Rose v. Gibson.]

2. *When trust must be evidenced in writing; statute of frauds.*—When the trust does not arise from facts attending the creation of the legal estate, but is dependent on the agreement or declaration of the parties, it can not rest in parol, but must, under the statute of frauds, be created by writing, signed by the party declaring or creating the same, or his agent or attorney lawfully authorized thereto in writing.

3. *Same.*—Where a trust in land, attempted to be established, imposes, by agreement of the parties, active duties on the trustee, it is not such a trust as results by implication of law, and is not valid, unless it was created by instrument in writing signed by the party creating or declaring the trust, or his agent or attorney lawfully authorized thereto in writing.

4. *Jurisdiction of courts over lands in another State.*—As to lands situate in another State, the courts of this State can exercise no jurisdiction *in rem*, or affecting the *res;* but if title or power affecting such lands was obtained by duress or fraud, upon proper averments, a personal decree may be had, vacating such title or power; or if such lands have been converted into money, or money has been realized from them, by one acting under a fraudulent title or power, he can be compelled to account, either in law or in equity, as the nature of the accounts, or the character of the relief may require.

5. *Decree sustaining demurrer not final.*—A decree which simply sustains a demurrer, without further order disposing of the cause, is not a final decree.

APPEAL from Lawrence Chancery Court.

Heard before Hon. THOMAS COBBS.

The bill in this cause was filed in November, 1880, the day of the month not shown, by William F. Rose and Julia F. Rose, his wife, against Orson D. Gibson and Mary J. Gibson, his wife, Joseph Lee and Rebecca Lee, his wife, Robert Wilson and Martha Wilson, his wife, and James M., Jacob, and Levi Warren; and its material averments are, in substance, as follows: Levi F. Warren, late of Lawrence county in this State, died intestate, about the year 1870, leaving Nancy A. Warren, his widow, and, as his only heirs-at-law, the said James M., Jacob, and Levi Warren, Mary J. Gibson, Martha Wilson, Rebecca Lee, and complainant Julia F. Rose, all of full age. At the time of his death, said decedent left no debts, and no administration was ever had on his estate, and no necessity existed for such administration. Levi F. Warren, "at his death owned" a large and valuable tract of land in said county, a particular description of which is given in the bill. In the early part of 1867, under an execution issued on a judgment which had been recovered against the said Levi F. Warren in the Circuit Court of said county, these lands were sold at sheriff's sale, and, at his request and for his benefit, Thomas J. Warren, his nephew, bid them off and the same were conveyed to him by the sheriff; but the purchase-money thereof was paid by Levi F. Warren, Thomas J. Warren accepting the title at the request, and solely for the benefit of the said Levi F. Warren. "Not long afterwards," Thomas J. Warren, at the request, and for the

exclusive. use and benefit of the said Levi F. Warren, conveyed said lands to Orson D. Gibson, the said Gibson paying nothing therefor, but receiving "the said lands on the same trust, on which said Thomas J. Warren received the same." The bill charges that Gibson was not "a purchaser of the said lands nor has he ever pretended to be a purchaser of the same; but that he accepted the title to the same from said Thomas J. Warren, to hold the same for the exclusive use and benefit of the said Levi F. Warren and at his request; that said Gibson was the son-in-law of the said Levi F. Warren, and that by the death of the said Levi F. his right to the property devolved (?), by operation of law, to his children, the complainants and defendants to this bill of complaint; and complainants say that no other persons are interested as heirs in said property." The bill further avers, "that during the whole time of the said trust of the title of said Thomas J. Warren, and during the whole time of the trust of the said lands in Orson D. Gibson, the beneficiary, Levi F. Warren, remained and was in possession of all of the said lands; that he resided on them, not changing his residence; that he had the same cultivated by his tenants and laborers whom he employed so to do; that he collected the rents, gathered the crops, and fully and completely enjoyed the usufruct of the said lands during his entire lifetime; and that he died in the possession and enjoyment of the same as fully as though the legal title had been in himself;" that his said heirs-at-law are entitled to have said lands divided among them, but that in the division "reference should be had to the advancements which their common ancestor had made to each of his children," a statement of which is given. It is also averred that "said Gibson had compromised the widow's dower interest in said lands, "for which he had paid her some money, and the said lands are charged with the payment of other sums, all of which are shown by the judicial proceedings in that case (?), and complainants hereby ratify and confirm the same, and are willing that the said Gibson shall have credit for the same in the settlement of his accounts and rents." The bill also contains this averment: "Complainants show that whatever money said Gibson has paid on said lands in the execution of his trust, they are willing should be allowed him on settlement. Further show that the rents of said lands have been worth about eighteen hundred dollars *per annum* since said Gibson has had possession of the same, besides the rents of the Texas lands."

The bill further alleges "that the said Levi F. Warren died the owner and was seized and possessed of a considerable quantity of lands in the State of Texas, the location, quantity and value of the same complainants are unable to give. They further show, that said Gibson obtained from complainants their

[Rose v. Gibson.]

signatures to a paper respecting the same, the contents and pur-
pose of which, and the use which the said Gibson intended to
make of the same, they were not fully informed; nor has he
ever informed them what he did with the said lands. Com-
plainants allege and believe that the said Gibson has used the
said lands in Texas in paying off and discharging the claims
and interest of the said Jacob Warren, James M. Warren and
Wilson and wife in the property of the said Levi F. Warren.
And complainants allege that the said lands are worth not less
than the sum of fifteen thousand dollars, and that the rents are
worth the sum of one thousand dollars *per annum*. Complain-
ants pray, that the said Gibson may show what he has done
with the said lands in Texas; and that he may be required to
account for the same with the annual rents on the same."

The prayer of the bill is further, "that all the parties defend-
ant may show what each has received by way of advancement,
and what each one has received of the assets of said estate
since the death of said Levi F. Warren; that the said Gibson
may be required to account with complainants in respect to his
said trust; that he shall show what amount of rents and cotton and
other assets he has received of said estate; that he shall be re-
quired by an order of this court to pay into court all the money
he has received for rents and for the sale of any of the property
of said estate, and that a receiver be appointed to take charge
of the said land and rent the same out; and that your Honor
would divide and distribute the said property among the heirs
of Levi F. Warren according to law," and for general relief.

The defendants Gibson and his wife demurred to the bill,
assigning numerous grounds, a statement of which are not
deemed necessary to an understanding of the opinion. The
chancellor was, on the hearing, of the opinion that the demur-
rer was well taken, and caused a decree to be entered sustain-
ing it. From that decree this appeal was taken, and it is here
assigned as error.

DAVID P. LEWIS, for appellant. (No brief came to the hands
of the reporter.)

W. P. CHILTWOOD, *contra.*—(1) A conveyance made to hin-
der, delay and defraud creditors is valid as to the parties, and
they, their heirs, or those claiming under them, are estopped
from disputing its validity. None but creditors can attack the
conveyance.—*King v. King*, 61 Ala. 479; *Pickett v. Pipkin*,
64 Ala. 520; *Evans v. Welch*, 63 Ala. 255; *Thames & Co.
v. Rembert*, 63 Ala. 570; *Strange v. Graham*, 56 Ala. 614;
*Marler v. Marler*, 6 Ala. 367; 2 Brick. Dig. p. 16, § 45.
While it may be contended that the bill does not show that

the deeds were made to hinder, delay and defraud creditors,. enough is alleged in the bill to call for an explanation, why these conveyances were made by the sheriff to Thomas J. Warren, and by him to Orson D. Gibson. The bill ought to show that Levi F. Warren was then free from debt, and that the· transaction was honest, and not made to hinder, delay and defraud his then existing creditors.—*Patton v. Beecher*, 62 Ala. 579. (2) If a defendant furnish money to buy his land, though the sale may be void as to creditors, it is good as against the defendant in execution.—2 Brick. Dig. p. 16, § 40; *Abney v. Kingsland*, 10 Ala. 355; *Eddins v. Wilson*, 1 Ala. 237. (3)· Trusts in lands, except such as result by implication or construction of law, can not be created, unless by instrument in writing, signed by the party creating or declaring the same, or· his agent or attorney lawfully authorized thereto in writing,. Code of 1876, § 2199; *Patton v. Beecher*, 62 Ala. 579. That case is well considered, and refers to, and explains fully *Kennedy v. Kennedy* (2 Ala. 571), *Bishop v. Bishop* (13 Ala. 475), *Barrell v. Hanrick* (42 Ala. 60), and other authorities cited and relied on by the solicitor for the appellant. There could be no trust in the lands in controversy under the allegations of· the bill, otherwise than by agreement between the parties to· the deeds, and any such agreement would be void, under the decision in *Patton v. Beecher*, *supra*, unless it was in writing. (4) When a resulting trust is sought to be established and engrafted on a conveyance which is absolute in its terms, the complainant must, by his bill, distincty and precisely aver the facts. from which it is claimed to result, and the proof must correspond with the pleadings.—*Lehman v. Lewis*, 62 Ala. 133; *Patton v. Beecher*, 62 Ala. 579. This is not done in the bill in this case. (5) The *lex loci rei sitæ* must govern as to the Texas lands. "The disposition, succession to, and distribution of personal property, wherever situated, is governed by the law of the country of the owner's or intestate's domicil at the time of his death;" but it is equally well settled in the law of all civilized countries, that real property, as to its tenure, mode of enjoyment, transfer and descent, is to be regulated by the *lex loci· rei sitæ*.—2 Kent's Com. pp. 536–7; *Goodman v. Winter*, 64· Ala. 410; *Brock v. Frank*, 51 Ala. 85; *Varner v. Bevil*, 17 Ala. 286. It is contended that the court having obtained jurisdiction over the person in Alabama, it has the jurisdiction and authority to go on and grant relief as to the Texas lands. But it will be observed that the bill prays for a division and distribution of the property of said decedent, including these· lands. That can not be done. The court can not enforce its decrees in the State of Texas. Its process would not be recognized and could not be enforced in that State. The court not·

[Rose v. Gibson.]

being able to make a division of these lands, it can not give full relief as to them, and it will, therefore, remit the complainant to the courts in Texas, which can give them all the relief to which they are entitled.—Authorities *supra ; Lide v. Parker*, 60 Ala. 165; *Harris v. Pullman*, 25 Amer Rep. 416.

STONE, J.—The present bill was filed to establish a resulting trust in lands in Lawrence county. Our statute of frauds, Code of 1876, § 2199, following the English statute of 29th Charles the Second, exempts from its operation such trusts as result by implication or construction of law, or which may be transferred or extinguished by operation of law. Mr. Justice STORY—Eq. Jur. § 1201—defines this species of trust as follows: "Where a man buys land in the name of another, and pays the consideration-money, the land will generally be held by the grantee in trust for the person who so pays the consideration-money." He says, "it has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit, rather than for that of another ; and that the conveyance in the name of the latter; is a matter of convenience and arrangement between the parties, for other collateral purposes." And Perry, in his work on Trusts, vol. 1, § 126, employs language almost identical with that used by Mr. Justice STORY. Each alike states this to be the rule, *in the absence of all rebutting circumstances.* · The rule has many exceptions, and the presumption does not arise, when the attendant circumstances are inconsistent with its existence. It is a mere presumption—a presumed intention—which the law raises, without any proof of the actual intention of the parties, other than the fact that one pays the consideration-money, while the other receives the title. If the title be taken in the name of the wife or child of him who supplies the money, this, without more, rebuts the presumption the law would otherwise raise. And, if "the trust is dependent on the agreement or declaration of the parties—when it does not arise from facts proved, attending the creation of the legal estate—it can not rest in parol. The statute is positive. It must be created by writing, signed by the party declaring or creating the same."—*Patton v. Beecher*, 62 Ala. 579.

The averments of the present bill are not very clear or explicit on several questions. True, the bill charges that Thomas J. Warren purchased the lands at sheriff's sale under execution against Levi F. Warren, made in 1867, and that Levi F., the execution debtor, himself furnished and paid the purchase-money. It also charges that Thomas J. Warren conveyed to Gibson without any consideration, and that these several things

[Rose v. Gibson.]

were done at the instance and request, and for the benefit of the said Levi F. It further charges that no change of possession took place, but that said Levi F. continued to reside on the lands, and enjoy their exclusive use and emoluments until his death, some three years afterwards. The bill offers no explanation of the purpose for which the trust was created, nor of the character of duties, if any, which were imposed on the trustee. From any thing that appears in the direct averments of the bill, it was a naked or dry trust, imposing no duties on the trustee. Yet in section five of the bill is this language: "Complainants further show that whatever money said Gibson has paid on said lands in the execution of his trust, they are willing should be allowed him on settlement. Further show that the rents of said lands have been worth about eighteen hundred dollars per annum, since said Gibson has had possession of the same." Now, this clause of the bill pretty clearly indicates that the trust did impose duties on the trustee, and that he had paid out moneys in its execution. The clause copied contains another obscurity. The bill nowhere informs us who has had the possession of the lands since the death of Levi F. Warren, nor is it anywhere shown that Gibson has held the possession. Yet, the bill seeks to charge him with rents at $1,800 per annum, "since he has had possession." The bill avers that Levi F. Warren died in 1870, and "left no debts, the same being all paid in full." The present bill was filed in November, 1880. It is not shown whether the alleged trust, first in Thomas J. Warren, and then in Gibson, was evidenced by writing. But the rule is that, as to contracts the statute of frauds requires to be in writing, it need not be averred in the pleading that they were in writing. That question arises on the evidence.

Under the principles settled in *Patton v. Beecher*,—62 Ala. 579—if the trust attempted to be set up in this case imposed, by agreement of the parties, active duties on the trustee, then it did not result by implication or construction of law, and is not valid, unless it was created by instrument in writing signed by the party creating, or declaring the same, or his agent or attorney lawfully authorized thereto in writing. And we may here repeat the forcible language employed in that case, that "it is difficult to conceive of any good motive a grantor can have in the execution of an absolute conveyance, intending that the grantee shall be the mere repository of a naked legal title, while he reserves the exclusive beneficial interest." We may add, if such conveyance is made, or procured to be made, with vicious intent—that is, with the intent either to delay, or to hinder, or to defraud creditors,—it is void, whether the trust be declared in writing or not.

[Edwards, Hudmon & Co. v. Meadows.]

Another feature of the case made by the bill may be commented on. It charges that Levi F. Warren died in 1870. The present bill was filed in November, 1880, probably more than ten years afterwards. Now, it is not averred when Gibson took possession, nor, indeed, that he ever took possession. To be liable for rents, he must have had possession, actual or constructive; and yet rents are claimed in this suit.

We hold that the averments of the bill in this case, so far as they relate to the lands in Alabama, are too indefinite and ambiguous to base relief upon. To decree and establish a resulting trust, the allegations and the proof should be clear.

The averments of the bill as to the lands in Texas are still more faulty. As to lands without the State, our courts can exercise no jurisdiction *in rem*, or, affecting the *res*. If title or power affecting these lands was obtained from complainants by duress or fraud, then, upon proper averments and proof, complainants can obtain a personal decree, vacating such title or power. So, if Gibson has converted those lands into money, or has realized moneys from them, then he can be compelled to account, either at law or in equity, as the nature of the accounts, or the character of the relief may require.—*Lide v. Parker*, 60 Ala. 165.

The bill in its present form is too indefinite to authorize relief. We can not know whether the defects can be cured by amendment. If the complainants desire to amend, they must apply to the court below. The cause having been submitted only on demurrer, and decreed in vacation, it is still pending in that court. A decree, simply sustaining a demurrer, without further order disposing of the cause, is not a final decree.

Affirmed.