MASSACHUSETTS BONDING & INSURANCE COMPANY *v.*
HIGGINS.

## Opinion delivered March 15, 1915.

1. SURETYSHIP—SURETY COMPANY—RIGHTS.—The rule of *strictissimi juris*, by which the rights of uncompensated sureties are determined, is not applicable to the contracts of surety companies, which make the matter of suretyship a business for profit.

2. SURETYSHIP—SURETY COMPANIES—RIGHTS AND LIABILITIES—HOW GOVERNED.—The business of surety companies is essentially that of insurance, and, their rights and liabilities under their contracts will be governed by the laws of insurance.

3. AGENCY—UNDISCLOSED PRINCIPAL—RIGHT TO SUE.—An undisclosed principal may sue on any contract, not under seal, made by his agent in his behalf.

4. SURETYSHIP—RIGHT OF UNDISCLOSED PRINCIPAL—BINDING CONTRACT.— Appellee, a surety company, undertook to indemnify and save harmless the obligee in the contract for any breach by a certain contractor of any terms of a binding contract. The obligee named in the contract was in fact the agent for appellant, his undisclosed principal. *Held*, the contract being in no sense personal, and being merely a contract of insurance, the undisclosed principal had a right to maintain an action against the surety company to indemnify him for a breach of the contract of the building contractor.

5. MECHANICS' LIENS—DUTY OF CONTRACTOR.—The law of the State with respect to mechanics' liens will be read into any contract that is made concerning the construction of a house, and the contract will be held to carry with it an obligation to construct the house and deliver it free from liens.

6. SURETYSHIP—BUILDING CONTRACT—MECHANICS' LIENS.—A surety bond which agreed to "indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract on the part of the said principal," held to cover mechanics' liens, left on the building unsatisfied by the contractor.

7. SURETYSHIP—BUILDING CONTRACT—LIENS—LIABILITY OF BONDING COMPANY.—When the trial court, upon sufficient evidence, finds that certain liens upon a building were based upon correct bills, that fact is sufficient to justify the inclusion of the amounts of the liens against a surety on the contractor's bond.

Appeal from Phillips Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Metcalf & Metcalf, Allen Hughes* and *W. W. Hughes,* for appellant.

1. An undisclosed principal can not enforce a guaranty running to the agent alone. 2 Mechem on Agency, (2 ed.), § § 2059, 2069; 1 Brandt on Suretyship & Guaranty, (3 ed.), § 133; 20 Cyc. 1399, and notes 16 and 17; *Id.* 1429, and notes; 22 Ark. 543; 123 Mass. 28; 2 Brandt, Suretyship & Guaranty, (3 ed), § 748; 32 Cyc. 123, par. 3; 5 Yerg. (Tenn.) 193; 45 Mo. App. 273; 29 L. R. A. (N. S.) 473; 12 Q. B. 310; 157 Mass. 221; 13 R. I. 117; 90 Ill. 396, 408; 61 N. Y. 39, 42; 44 So. 642, 13 L. R. A. (N. S.) 157; 97 Mass. 303; 93 Am. Dec. 93; 121 N. Y. App. Div. 667; 143 Ia. 61; 57 Fed. 463; 4 B. & C. 664.

2. The proof shows that the amount claimed by appellee represents sums she has paid out to material furnishers. The bond does not contract to indemnify Higgins against the claims of lienholders, for either labor or materials. 27 L. R. A. (N. S.) 575, foot note; *Id.* 577, note; 26 Ore. 106; 37 Pac. 712; 37 Fla. 542; 19 So. 883.

3. A subcontractor, material man or laborer can not fix a valid lien upon the property in a proceeding against the owner, unless he first obtain a judgment against the contractor or join the contractor as a party defendant with the owner in the action to impress the lien, the contractor being a necessary party. 118 Tenn. 548, 554; 24 Mont. 65, 74; 2 Col. App. 381; 31 Pac. 187; 4 Col. App. 165; 34 Pac. 1113; 36 Pac. 445; 39 Pac. 1095; 51 Mich 573; 17 N. W. 62; 43 Minn. 449; 45 N. W. 868; 19 Mo. App. 38; 109 N. C. 658; 73 Ga. 322; 92 Ga. 499; 2 Whart. (Pa.) 193; 65 Mo. App. 435.

*Moore, Vineyard & Satterfield,* for appellee.

1. The decree should be affirmed because the transcript does not contain all the testimony. 89 Ark. 570; 35 Ark. 412.

2. It is well settled that an undisclosed principal may sue in actions of this kind. 76 Ark. 558, 560; 78 Ark. 244; 87 Ark. 378; 50 Ark. 433; 60 Ark. 66; 87 Ark. 434; 16 Law. Ed. (U. S.) 36; 29 *Id.* 767.

The contract provided that the price of $6,868, should "include all of the labor and materials for the building except mantels and electric fixtures." This

can mean nothing else than that the contractors should pay for the labor and materials employed upon and used in the construction of the building.

That an undisclosed principal can not enforce a "guaranty running to the agent alone," is a theory not applicable in this case. The bond is not a contract of guaranty but of suretyship, and appellant's obligation is that of a surety. 32 Cyc. 20; 93 Ark. 454; 89 Fed. 464; 20 Cyc. 21, note 52; 16 L. R. A. (N. S.) 365.

3. Appellant is an insurer, a paid and compensated surety, and the rule of *strictissimi juris* sought to be invoked by it is not applicable. 79 Ark. 530; 33 L. R. A. (N. S.) 513.

4. The contractors were not necessary parties to this suit. 82 Ark. 247; Kirby's Dig., § § 4970, 4994.

McCULLOCH, C. J. Koehler & Newhouse, a firm of builders, entered into a written contract with J. G. Higgins, one of the plaintiffs, to construct a house for the latter in the city of Helena, and defendant, Massachusetts Bonding & Insurance Company, at the instance of said contractors, undertook by written contract or bond, to "indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the said principal to be performed." The contract of the defendant was executed at the instance of Koehler & Newhouse, and for a consideration, and recited the contract between said parties and the plaintiff Higgins. Mary W. Higgins, the wife of J. G. Higgins, was the real party in interest, she being the owner of the property, and the contract was made in her husband's name for her benefit. In other words, she was the undisclosed principal. Koehler & Newhouse failed to comply with their contract and quit the work before the building was completed, and damage was sustained in that the house was completed by Mrs. Higgins at a cost in advance of the contract price, and also liens were asserted against the property. Mrs. Higgins and her husband instituted this action in the chancery court of Phillips County against the defendant bonding company, and certain par-

ties who asserted liens were made parties to the action. No question has been raised as to the action being properly brought in the chancery court. The case was heard upon the testimony and the chancellor found in favor of the plaintiff, Mrs. Mary W. Higgins, and rendered a decree against the bonding company, after having ascertained the amount of the liens against the building.

(1-2-3) The principal contention on behalf of the defendant is that there is no liability because of the fact that J. G. Higgins, the party with whom the contract was made, had no interest in the subject-matter, and that an action could not be maintained on the contract by an undisclosed principal. In other words, they invoke the rule laid down by Mr. Mechem that "an undisclosed principal can not enforce a guaranty running to the agent alone." 2 Mechem on Agency (2 ed.) § 2059. Other authorities are cited in the brief which sustain that rule. Conceding the force of that rule, it does not follow that it is applicable to the facts of this case. The bonding company is neither a guarantor nor a surety in the ordinary sense of the word, but is a compensated insurer. This court has so held in many cases. *American Bonding Co.* v. *Morrow,* 80 Ark. 49. The cases on this subject are collected in the note to the case of *Hormel* v. *American Bonding Co.,* 33 L. R. A. (N. S.) 513, and the following is stated as the rule deducible from those cases: "The overwhelming weight of authority supports the proposition that the rule of *strictissimi juris,* by which the rights of uncompensated sureties are determined, is not applicable to the contracts of surety companies, which make the matter of suretyship a business for profit; that their business is essentially that of insurance; and that therefore their rights and liabilities under their contract will be governed by the laws of insurance." This statement is directly in line with our decisions on that subject. In an exhaustive note to the case of *Shields* v. *Coyne,* 29 L. R. A. (N. S.) 472, the rule as to actions by undisclosed principals is stated as follows: "The general rule has frequently been stated and applied that an undisclosed principal may sue on

any contract not under seal, made by his agent in his behalf. This doctrine apparently originated as corollary to the proposition that an undisclosed principal was liable upon any contract made in his behalf by his agent at the option of the other party thereto, the theory being that inasmuch as the principal was liable upon such contracts he should be permitted to sue thereon.''

That doctrine was recognized by this court in the case of *Frazier* v. *Poindexter*, 78 Ark. 241.

(4) In the note last referred to, exceptions are stated to the general rule about suits maintainable by an undisclosed principal. One of the exceptions to the general rule is that an undisclosed principal can not maintain a suit upon the contract of guaranty or indemnity for the reason that ''such contracts are personal in their nature, and there is a mutual trust between the parties thereto which renders the general rule inapplicable.'' Now, the answer to this statement of the exception to the rule is that while a contract of guaranty or of suretyship in the ordinary sense of the words is personal, a contract of insurance, such as in this case, is in no sense personal. Being merely a contract of insurance, there is no reason why the general rule should not prevail permitting an undisclosed principal to sue. It certainly is the just rule, for the undisclosed principal in this case was liable for the contract made by her agent and there is no reason why she should not reap the fruits of the contract. There were no personal undertakings on her part in the contract of insurance, which was an obligation based upon certain conditions precedent whereby the company undertook to indemnify or insure the plaintiff against any loss. We think the contention of learned counsel for defendant is therefore unsound, and that it affords no reason for denying liability under the contract.

(5-6) The next contention is that the bond does not insure against liens. It is true, the bond is only to ''indemnify and save harmless the said obligee from any pecuniary loss resulting from the breach of any of the terms, covenants and conditions of the said contract

on the part of said principal," but the law of the State
with respect to mechanics' liens is read into any contract
that is made concerning the construction of a house, and
the contract necessarily carried with it an obligation to
construct a house and deliver it free from liens. In fact,
the contract contains an express stipulation "that it in-
cludes all of the labor and materials for the building ex-
cept mantels and electric fixtures." It would be a very
narrow construction of the contract to say that the bond
was not intended to cover any liens, for unpaid claims
on the building causing a pecuniary loss directly from the
breach of the contract on the part of the principal. That
construction would indeed be a strict one in accordance
with the old rules applicable to accommodation sureties,
but it is not in accord with the liberal rules of inter-
pretation placed upon contracts of insurance.

(7) The only other contention is that the amounts
paid out for liens of subcontractors should not be in-
cluded in the liability on the bond for the reason that the
principal contractors were not made parties to the suit.
It was not essential that the validity of the lien should
be first adjudicated in a suit against the principal con-
tractor, for the obligee in the bond had the right to pay
off bills which constituted liens on the building without a
suit. *Federal Union Surety Co.* v. *McGuire,* 111 Ark.
373. The correctness of the bills was proved however, in
this suit, and a finding by the trial court, upon sufficient
evidence, that the bills were correct and constitute a lien
on the building, was sufficient to justify the inclusion of
the amounts in the award against the bonding company.

The liability of the defendant was clearly established
by the evidence, and the decree of the chancellor was cor-
rect. Affirmed.