Argued June 2; affirmed June 16, 1936

# KENNEDY *v.* FIDELITY & DEPOSIT COMPANY OF MARYLAND

(58 P. (2d) 625)

*Arthur D. Platt* and *C. E. Wright,* both of Portland (Platt & Black, of Portland, on the brief), for appellant.

*John Lichty,* of Portland, for respondent.

ROSSMAN, J. It is necessary to express an opinion upon the following three questions submitted by this appeal: (1) Is the receiver of the Paul E. Williams Co. of Oregon, which was a broker licensed under the provisions of § 25-1309, Oregon Code 1930, to sell securities in this state, entitled to maintain an action upon the bond executed by that broker and its surety, pursuant to the section of our laws just mentioned; (2) can he, in his official capacity, maintain this action upon the bond just mentioned as assignee of claims held by the holders of interim certificates issued by the broker; and (3) can this action be maintained upon the bond without alleging that the broker employed fraud in the transactions out of which the claim against it arose.

Omitting mention of formal matters, the complaint alleges that the plaintiff is the receiver of the Paul E. Williams Co. of Oregon; that on January 12, 1931, a Washington corporation, upon receiving a permit to deal in investment securities in this state, and the defendant executed a bond which provided:

"If the said principal, its officers, agents, employees and trustees, shall conduct and carry on its said business as a Stock and Bond Broker without fraud or fraudulent representation, and shall comply with all the requirements and provisions of said act, and acts amendatory thereof, and shall honestly and faithfully perform every undertaking and agreement entered into by it as a licensed broker under said act, and shall refrain from doing any act or thing, and from any conduct constituting improper, fraudulent or dishonest dealing, within the meaning of said act, then this obligation shall be void; otherwise to remain in full force and effect."

Further, the complaint alleges that on January 29, 1931, the aforementioned Oregon corporation purchased the Oregon business of the Washington corporation, assuming in the transaction all of the Oregon liabilities of the vendor; that on February 5, 1931, the Oregon corporation received a broker's permit from the corporation commissioner of this state; that on the same day the bond previously mentioned was amended by the defendant by inserting in it the name of the Oregon corporation; that between February 5, 1931, and April 23, 1931, the Oregon corporation sold to sundry persons securities without making immediate delivery; that the account books of the Oregon corporation indicate that on April 23, 1931, there was due from it to the holders of the interim certificates issued by it and by the Washington corporation to Oregon purchasers, $49,135.51; that the claimants have filed claims with the plaintiff;

that the Washington corporation has been declared a bankrupt by the United States district court; that it is "wholly insolvent and unable to respond in any manner to any of the interim certificate holders"; that the Oregon corporation "is wholly insolvent and will be unable to pay to the holders of said interim certificates issued and assumed by it any part of the said sum of $49,135.51"; that the securities which these corporations contracted to deliver to the interim certificate holders "cannot be delivered in specie in whole or in part"; and that since the institution of this suit a dividend of 30 per cent has been declared. For a second cause of action, the complaint alleges, in addition to all of the matters already mentioned, that all, except 20, of the claimants have assigned their claims to the plaintiff "as receiver * * * and that this plaintiff, as receiver aforesaid, now owns and holds each and every and all of said claims". The total of the assigned claims, according to the complaint, is the sum of $29,-503.61. The prayer seeks judgment for the sum of $34,305.82 and $10,000 attorneys' fees; but, if recovery can not be had without consideration of the assignments, seeks judgment for the sum of $29,503.61 plus $10,000 attorneys' fees. The complaint does not allege that the brokers or either of them employed deceit in any transaction with the interim certificate holders, nor does it anywhere mention fraud. The complaint does not disclose the reason for the inability of the brokers to comply with their duties to the interim certificate holders, unless the reason be the fact that each is insolvent. No charge is made that the brokers violated any provision of our laws. The demurrer was predicated upon contentions that the plaintiff had no capacity to sue and that the complaint failed to disclose a cause of action.

■ We shall now consider the merits of the defendant's contention which submits that, since the complaint does not allege that the claims described in it had their bases in fraudulent conduct of the brokers, it fails to state a cause of action. In *State ex rel. v. Francis*, 152 Or. 448 (54 P. (2d) 297), we considered a similar contention. After analyzing § 25-1319, Oregon Code 1930, and the available authorities, our decision, written by Mr. Justice BELT, stated:

"Having thus declared the purpose and object of the blue sky law, it follows that the faithful performance clause exacted in the bond in question was not authorized and may be rejected as surplusage. With the elimination of such clause it is plain that the bond does not afford a basis for an action for breach of contract. It covers only transactions where fraud is involved."

We remain satisfied with that conclusion. The appellant, referring to the decision just mentioned, which was announced after the present complaint had been prepared states:

"The appellant, therefore, concedes that the complaint in this case must be amended to conform to the requirements of that case,—that is, the inclusion of allegations expressly setting forth fraud."

It is clear, therefore, that the complaint does not disclose a cause of action.

■ We have no power to permit an amendment in this court: Clark on Code Pleading, p. 512.

It follows from the above that the judgment of the circuit court dismissing the action must be affirmed. But, since a new complaint may be filed, we deem it advisable to express an opinion concerning the merits of the defendant's two other contentions.

 It will be observed that the bond which the plaintiff seeks to enforce contains no promise in favor of the broker; in fact, the broker, together with the defendant, is a party signatory to the bond. The bond certainly was not an asset of the broker. Its covenants, upon breach, created liabilities. No sum paid by the defendant, as surety, could ever enter the bank account of the broker. The undertaking of the bond was to indemnify those prejudiced by the broker's fraudulent conduct. Manifestly, the broker could never maintain an action upon the bond for its own enrichment or indemnity, whether solvent or insolvent. Sums paid by the defendant, pursuant to the covenants of the bond, could not become part of the general assets of the receiver available to all of the creditors of the insolvent broker. The bond, as construed in *State ex rel v. Francis*, supra, undertakes to indemnify only a special class of the broker's creditors—those prejudiced by its fraudulent conduct. The broker's landlord, clerks, etc., have no recourse to the bond, but must look to the general assets. Obviously, it was never intended that those protected by the bond should enforce their rights in actions instituted by the broker.

From Clark on Receivers (2d Ed.), § 829, we quote:

"The ordinary equitable nonstatutory receiver of an insolvent corporation makes his title (whatever title that is, either equitable or otherwise) through the corporation. He can not through his appointment acquire that which the corporation never had. He represents the creditors of the corporation in the administration of his trust, but his trust relates only to the corporate assets. The liability of the stockholders, at least the double liability, may be regarded as a collateral statutory obligation of the stockholders for the benefit of the creditors by which the former become sureties to the latter for the debt of the corporation.

Neither a receiver nor an assignee under a voluntary general assignment for the benefit of creditors, each of whom represents creditors as well as the insolvent, acquires any right to enforce a collateral obligation given to a creditor or to a body of creditors by a third person for the payment of the debts of the insolvent.

"The corporation itself can not enforce the double liability. It is no part of the assets. The double liability of a stockholder created by the Constitution of 1865 of Missouri could not be enforced by the corporation. An ordinary chancery receiver acquires no title to property in which the corporation has no interest or to claims which the company could never have sued on nor can he deprive the special creditors of rights of property and of an action secured to them by the statute independent of the company and its property."

The following is taken from High on Receivers (4th Ed.), § 315:

"While the receiver of an insolvent corporation is thus treated as the representative of both creditors and shareholders, so far as any beneficial interest is concerned, yet, for the purpose of determining the nature and extent of his title, he is regarded as representing only the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and deriving his own title under and through it. For purposes of litigation, therefore, he takes only the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except when acts have been done in fraud of the rights of the latter, but which are valid as against the corporation itself, in which case he holds adversely to the corporation. And as regards the nature of the defense which he may interpose in an action brought against him in his official capacity, * * *"

From Tardy's Smith on Receivers (2d Ed.), § 744, we quote:

"The power of a receiver to sue under the direction of the court is necessary incident to the proper performance of his duties, especially in respect to reducing the property of the receivership to possession. His right to sue is limited to the right of the person or corporation over whose property he is appointed, if no receiver had been appointed except in those instances where, as a representative of the creditors, he may avoid illegal and fraudulent acts of the party whom he succeeds which the party might be estopped from doing."

The parties cite many decisions of various courts, all of which we have examined. None of them is at variance with the principles stated in the above treatises. The plaintiff believes that the holding of the Federal supreme court in *McCandless v. Furlaud,* 296 U. S. 140 (80 L. Ed. 74, 56 S. Ct. 41), justifies the maintenance of this action. The majority of the court in that decision held that the receiver of a corporation, victimized by its promoters and their confederates, could compel the wrongdoers to restore their illicit gains. The facts were that a corporation entitled Furlaud & Company, which was engaged in investment banking, made a profit by fraudulent means of more than $2,500,000 through the organization of another corporation entitled Duquesne Gas Corporation, and through the sale of bonds, notes and stock issued by the latter corporation. According to the decision of the majority, the Duquesne Gas Corporation was insolvent at the outset. Further, according to the decision of the majority, the organization of the corporation just mentioned and the sale of its securities were contemporaneous acts. The majority pointed out that the organizers, therefore, were not the only ones concerned, but that, since they had contracted for the sale of all of its securities before the corporation was

654

organized, the contracting purchasers were also concerned. The liens upon the property exceeded its value. In holding that under these circumstances the receiver of the victimized corporation could maintain an action to compel the restoration of the illicit profits, the majority likened the situation to those in which the courts recognize the right of a receiver to set aside transfers made for the purpose of defrauding creditors, stating that "the distinction between such a situation and the present is one solely of degree". The court also pointed out that the transfer to the promoters of all of the securities of the victimized corporation at an inadequate price was in violation of the constitution and statutes of the state of Pennsylvania under whose laws the corporation had been organized. The minority held that only the defrauded security purchasers were entitled to sue. We fail to find in this decision anything that justifies the receiver in maintaining this action. The majority painstakingly distinguished *Old Dominion Copper Mining & Smelting Co. v. Lewishon,* 210 U. S. 206 (28 S. Ct. 634, 52 L. Ed. 1025), which held that if all of the stockholders participate in the wrongful conduct of the promoters the corporation, upon acquiring new stockholders, can not complain. It found that the corporation possessed a cause of action, at least when it acquired new security owners. In other words, the cause of action was one that the corporation could have enforced. In our present instance, the broker never possessed the cause of action the receiver is seeking to enforce. The broker, under no circumstances, could have maintained an action upon this bond. The right of action upon this bond belongs exclusively to defrauded creditors.

■ As already pointed out, the bond described in the complaint was given for the benefit of the creditors of the broker, and not for the benefit of the latter. The blue sky law is not concerned with his welfare. The rights which the plaintiff is seeking to enforce did not belong to the Paul E. Williams Co. of Oregon, but to a special class of its creditors. Therefore, the plaintiff is not seeking to avail himself of any rights belonging to the corporation, but is seeking to enforce rights which the creditors possess. We believe that the plaintiff can not maintain this action.

■ What has been said in the preceding paragraphs disposes, in a large measure, of the contention that, since 234 of the 255 claimants have assigned their claims to the receiver, he may maintain this action as assignee. He, however, is seeking to maintain it, not in his personal capacity but as receiver. It is his duty, as receiver, to liquidate as promptly as possible the assets which came into his possession, and not to extend his dominion by acquiring additional assets by assignment. He has no right to employ the receivership assets for the purpose of conducting litigation for the benefit of assignors. We conclude that the assignments do not justify the maintenance of this action.

The circuit court did not err in sustaining a demurrer to the complaint and in entering judgment for the defendant. Its judgment is affirmed.

KELLY, BELT, BEAN and RAND, JJ., concur.

CAMPBELL, C. J., and BAILEY, J., did not participate.