UNITED STATES FIDELITY & GUARANTY COMPANY *v.*
COLONIAL BAKING COMPANY.

4-9711                                                   247 S. W. 2d 997

Opinion delivered March 31, 1952.

Rehearing denied May 12, 1952.

*Wright, Harrison, Lindsey* and *Upton,* for appellant.

*Jacoway & Jacoway,* for appellee.

ED. F. McFADDIN, Justice.   Appellee recovered judgment against appellant on a bond appellant had executed pursuant to the laws of the State of Louisiana.   Such is the case now presented.

The Colonial Baking Company (hereinafter called "Colonial") is a Delaware corporation, but domesticated in Arkansas, and with a bakery plant in Little Rock. From its Little Rock plant, Colonial made to consignees in Louisiana, the shipments involved in this litigation. The United States Fidelity & Guaranty Company (hereinafter called "Guaranty Company") is a Maryland corporation, but domesticated in both Arkansas and Louisiana, and owns personal property in Pulaski County, Arkansas.

In the course of its business, Colonial received at its Little Rock plant, orders for certain of its products from retailers in the Cities of Monroe and Shreveport, Louisiana. These bakery products were manufactured by Colonial in Little Rock, and shipped C.O.D. via motor carrier to the consignees in Louisiana. The motor carrier was Smith Transportation Company[1] (hereinafter called "Smith") which was a carrier for hire over designated routes from Little Rock to Monroe and Shreveport, Louisiana. Smith accepted the shipments from Colonial, under an agreement to deliver the shipments to the purchasers only on full payment, which payment Smith agreed to promptly remit to Colonial. Smith in fact received from the consignees the payments amounting to several thousand dollars, but defaulted in delivering such payments to Colonial; and Smith is now bankrupt.

In order to obtain a permit as a motor carrier in Louisiana, Smith was required by statute and by order of the Louisiana Public Service Commission, to make a bond in the sum of $3,000. This bond was made with Smith as principal, and Guaranty Company as surety, and the pertinent language of this bond will be recited in Topic II *infra*. Colonial gave the Guaranty Company, in Little Rock, due notice of Smith's default, and made demand on the Guaranty Company for payment, in accordance with the bond; and when such payment was refused, Colonial filed action against the Guaranty Company in the Pulaski Circuit Court. Upon the facts stipulated, as hereinbefore detailed, Colonial recovered judgment against the Guaranty Company for $1,107.59, which Colonial concedes[2] is all it is entitled to recover under the terms of said bond. To reverse that judgment, the Guaranty Company has appealed, and presents the two questions to be discussed.

---

[1] Originally the name was Summer & Smith Truck Lines, but was changed to Smith Transportation Company.

[2] The bond was for $3,000, and Smith's total default to Colonial was in excess of that amount, but the Guaranty Company's liability under the bond was limited to $3,000 and the Guaranty Company has already paid to other claimants in Louisiana the sum of $1,892.41, so that only $1,107.59 remains as the Guaranty Company's liability under the bond.

I. *May Two Foreign Corporations Use the Courts of Arkansas in a Claim Arising in Another State?* If Colonial had a cause of action for interstate shipments (a point to be considered in Topic II), then Colonial's cause of action was transitory and could be brought wherever jurisdiction of the parties could be obtained. *American Railway Express Co.* v. *H. Rouw Co.*, 173 Ark. 810, 294 S. W. 401; *Yockey* v. *St. Louis-San Francisco Ry. Co.*, 183 Ark. 601, 37 S. W. 2d 694.

We hold, under the authority of the Yockey case, *supra,* that the Pulaski Circuit Court was correct in taking jurisdiction in the case at bar. In the Yockey case, the plaintiff, a resident of Missouri, received injuries in that State at a railroad crossing of the St. Louis-San Francisco Ry. Co., which was a Missouri corporation. Yockey sued the railway company in the Circuit Court of Crawford County, Arkansas, in which County the railway had its lines and an agent upon whom process was served. The railway company offered the same objections in the reported case as the Guaranty Company offers in the case at bar—*i. e.,* all of the parties are nonresidents of Arkansas, and the cause of action arose in another State. But we held that the Arkansas Court had jurisdiction; and Chief Justice HART, speaking for the Court, said:

"The defendant owns and operates a line of railroad in this State, and has voluntarily placed agents here in the conduct of its business who are authorized to receive service of summons under our statute. It has become in all essential respects a domestic corporation, in so far as transacting business in this State is concerned. The right of action to the plaintiff was transitory, . . ."

Among other cases,[3] appellant cites and strongly relies on *Grovey* v. *Washington Natl. Ins. Co.*, 196 Ark.

[3] Some of the other cases cited by appellant are *National Liberty Ins. Co.* v. *Trattner*, 173 Ark. 480, 292 S. W. 677; *Protas* v. *Modern Investment Corp.*, 198 Ark. 300, 128 S. W. 2d 360; *Barnett* v. *National Surety Corp.*, 195 Miss. 528, 15 So. 2d 775; *Commonwealth* v. *Beals*, 139 Misc. 785, 249 N. Y. Supp. 232; *Long* v. *Ferris*, 196 Misc. 567, 94 N. Y. Supp. 2d 493; *Bower* v. *Watson*, 146 Tenn. 626, 244 S. W. 362, 26 A. L. R. 991.

697, 119 S. W. 2d 503. In that case, Grovey was a resident of Illinois, and Washington National Insurance Co. was a corporation of the same State, but domesticated in Arkansas. The Insurance Company made a contract employing Grovey as a general agent in Missouri, Kansas, Oklahoma, Texas, and those portions of Arkansas in which the Company accepted business. Then—according to Grovey—the Insurance Company breached the contract, and Grovey sued in Arkansas for damages. In refusing jurisdiction of the Arkansas Courts to Grovey, Mr. Justice McHANEY, speaking for this Court, said:

"While such portions of Arkansas as appellant saw fit to accept business from were covered by the contracts, still they do not arise out of business done on contracts made in Arkansas. In other words, the contracts in suit being made outside of the state by nonresidents of the state, have no relation to any business transacted by appellee in this state. No policyholder is or could be interested in these contracts, which were made, as we understand it, while appellant was a citizen of Oklahoma, but perhaps made, signed and delivered in the state of Ilinois, where both appellant and appellee are now residents. They relate to commissions which appellant might or might not earn in the states named, including Arkansas, if appellee saw fit to accept any. business from Arkansas."

In distinguishing the Grovey case from the Yockey case, Mr. Justice McHANEY said of the Yockey case:

"It differs from the instant case in many respects. There it (i. e., Ry. Co.) owned a line of railroad in the state, had become, as the court said, in all essential respects a domestic corporation. Here, appellee owned no property in this state, even though appellant contends that it does, because it had premiums coming due from policyholders in this state. But unpaid premiums are not property. They may never be paid. It maintains no place of business in this state. It has soliciting agents, but they furnish their own place of business, work only when they wish to do so and receive a commission on

business written. Such applications as they receive are transmitted to the home office for acceptance or rejection. We think this distinction is clearly illustrated by the comments of the late Chief Justice HART, speaking for the court in the Yockey case. . . ."

To discuss in detail the other cases cited by the appellant would unduly prolong this opinion. It is sufficient to say that Colonial's cause of action was transitory; that both Colonial and the Guaranty Company are corporations domesticated in Arkansas; that Guaranty Company has property and agents in Pulaski County, Arkansas; that Colonial has its bakery plant in Pulaski County, Arkansas, at which plant were manufactured the products it shipped to Louisiana; and that the shipments resulting in this litigation originated in Pulaski County, Arkansas. All of these facts add up to the result that the Pulaski Circuit Court was correct in taking jurisdiction in the case at bar.

II. *Does the Bond Signed By the Guaranty Company Cover Interstate Shipments?* This question has given us more serious concern than the first question. In order to obtain a motor carrier permit and use the highways of Louisiana, Smith posted a bond with the Louisiana Public Service Commission, with the Guaranty Company as surety thereon. This bond recited, *inter alia*:

"Whereas, in accordance with the terms and provisions of Act No. 301 of 1938 of the Legislature of the State of Louisiana, the Principal is operating motor freight vehicles as a common carrier under the jurisdiction of the Louisiana Public Service Commission.

"Now, therefore, the condition of this obligation is such that if said Principal shall pay and remit promptly such money as may be due to shippers or consignors or other lawful owners arising out of collection-delivery shipments made by such persons; and conduct its business according to the provisions of Orders Nos. 751 and 759 of the Louisiana Public Service Commission as relating to collect-on-delivery shipments, then this obligation

shall be null and void; otherwise to remain in full force and effect. . . .

"It is likewise mutually understood and agreed that where a right of action exists in favor of any person or persons by reason of the neglect, failure or refusal of the said Principal to pay or remit to shippers or consignors or other lawful owners, such money as may be due arising out of collect-on-delivery shipments made by such person or persons, such right of action shall survive in favor of such person or persons as now provided by law.

"It is also understood and agreed, that this bond shall cover any action instituted by any person who may sustain loss by reason of the neglect, failure or refusal of said Principal to pay or remit to shippers or consignors or other lawful owners arising out of collect-on-delivery shipments made by such person or persons, even though such action be instituted solely against the Principal."

Appellant insists that the bond was made to protect Louisiana *intrastate* C.O.D. shipments, and not to protect *interstate* C.O.D. shipments; and appellant says:

"Certainly the Louisiana Public Service Commission cannot fix rates chargeable in interstate commerce. *State of Missouri* v. *Kansas Natural Gas Company* (1924), 44 S. Ct. 544, 265 U. S. 298, 68 L. Ed. 1027. Certainly the Louisiana Public Service Commission could not require a bond as a condition to engaging in interstate commerce. *Seelig* v. *Baldwin* (D. C. N. Y. 1934), 7 F. Supp. 776. Affirmed—55 S. Ct. 120, 293 U. S. 522, 79 L. Ed. 632. Certainly the Louisiana Public Service Commission could not 'supervise, govern, regulate and control' or 'prescribe rules and regulations' if such action on the part of the Louisiana Public Service Commission were meant to apply to interstate commerce."

Notwithstanding appellant's arguments, we reach the conclusion that the bond here involved covers an interstate shipment like the one in question. The bond was not a burden on interstate commerce, but in aid of it.

See *Nippert* v. *City of Richmond,* 327 U. S. 416, 90 L. Ed. 760, 66 S. Ct. 586. The Guaranty Company was a paid surety on Smith's bond, and in the absence of any language excluding interstate shipments, then we perceive no reason why such shipments would not be included; because any doubts in construction of such a bond are construed against the paid surety. *Mass. Bonding Co.* v. *Higgins,* 117 Ark. 372, 174 S. W. 1150; *Federal Union Surety Co.* v. *McGuire,* 111 Ark. 373, 163 S. W. 1171; *American Bonding Co.* v. *Morrow,* 80 Ark. 49, 96 S. W. 613.

The bond is not limited to intrastate commerce; and a study and analysis of the Louisiana Act 301 of 1938 shows no language limiting the bond to intrastate commerce. Section four of the Act says: "The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all motor carriers. . . ."

The Act makes no distinction whatever regarding transportation originating within or without the State of Louisiana. It is true that Louisiana Public Service Commission's authority to regulate motor carriers is limited to those carriers transporting persons and property on the public highways and over the public bridges of that State. Nevertheless—in the absence of any statutory restriction or restrictive language in the bond—we conclude that the $3,000 C.O.D. bond was intended to cover all losses and shortages occurring by reason of the operation of such motor carrier in the State of Louisiana, even though the shipments originated in another state.

The Louisiana Legislature of 1948, by Act 202, amended Section four of the Act 301 of 1938; and the amendatory language makes it rather obvious that the original Act of 1938 intended the bond to cover both interstate and intrastate shipments; for the only appreciable change made under the 1948 amendment was the inclusion of the following provision:

"In those cases where the common carrier's solvency is such that it has qualified with the Interstate Commerce

294

Commission as a self-insurer, as authorized by Sec. 215 of the Federal Motor Carrier Act of 1935, the Louisiana Public Service Commission may, in its discretion, permit such common carrier to be a self-insurer in Louisiana.''

Our study discloses that the Supreme Court of Louisiana has not passed on the question here presented, so we are without a guiding case from the State which required the bond. In the absence of such a decision, we have been obliged to make our own construction.[4] In so doing, we reach the conclusion that the bond covered the interstate C.O.D. shipments here involved.

The judgment is in all things affirmed.

Mr. Justice MILLWEE not participating.

---

[4] In Prudential Ins. Co. v. Ruby, 219 Ark. 729, 244 S. W. 2d 491, we cited cases and quoted authorities about the court of the forum acting in the absence of a decision from the court of the place of the contract.