Submitted December 13, affirmed December 29, 1960

# BUTTE MOTOR COMPANY *v.* STRAND, AND HARTFORD ACCIDENT AND IN-DEMNITY COMPANY

## 358 P. 2d 279

Roy Harland and Rhoten, Rhoten & Speerstra, Salem, filed a brief for appellant.

Lewelling & Gies, Salem, filed a brief for respondent.

Before McALLISTER, Chief Justice, ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

McALLISTER, C. J.

This is an action by Butte Motor Co., a Montana corporation, against Delfred J. Strand, an automobile dealer, and Hartford Accident and Indemnity Company, the surety on his automobile dealer's bond. The defendant Strand made no appearance but Hartford answered and put in issue its liability on the bond. The court tried the case without a jury and entered general findings and a judgment in favor of Hartford. The plaintiff appeals.

The sole question presented by this appeal is the scope of the liability imposed by the bond.

The plaintiff was engaged in the automobile business in Butte, Montana. At one time Strand had worked in Butte as a salesman for plaintiff. In 1958, Strand was engaged in the used car business in Salem. He was licensed pursuant to ORS 481.305 to 481.370 and had filed the bond required by ORS 481.305(3)(c).

For several months prior to June 1958, plaintiff had been bringing used cars from Butte and leaving them with Strand for sale at his used car lot in Salem. Strand testified in effect that the cars were consigned to him, that he was to sell them and to pay plaintiff for the cars as they were sold. Until June, Strand apparently paid plaintiff for any of its cars that were sold by him.

On June 21, 1958, plaintiff delivered to Strand a 1958 Ford Thunderbird. Strand then had on his used car lot two other vehicles previously delivered to him by plaintiff—a 1957 Ford sedan and a 1956 Ford pickup. On that date Strand gave plaintiff two checks— one for $3,900 to pay for the Thunderbird and one for $1,850 to pay for the Ford sedan. When these checks were presented, payment was refused because of insufficient funds in Strand's account.

On July 30, 1958, a conditional sale contract was entered into whereby plaintiff agreed to sell to Strand the three cars described above for the sum of $6,750, payable in 60 days. On October 13, 1958, the parties, by written agreement, extended the time of payment to November 1, 1958. Strand sold all three of the cars but did not pay plaintiff for any of them. He was in financial difficulty and used the money for other purposes.

The bond filed by Strand, pursuant to ORS 481.310① was conditioned that Strand would "conduct his business as a dealer without fraud or fraudulent representation and without violating any of the provisions of this chapter [ORS ch 481, title 39]."

■ Plaintiff asserts no claim based on a violation by Strand of any of the provisions of the chapter regulating motor vehicle dealers. Plaintiff concedes that no fraudulent representations were made by Strand. Plaintiff bases its claim solely on the theory that

---

① (1) The bond mentioned in paragraph (c) of subsection (3) of ORS 481.305 shall have a corporate surety licensed to do business within this state. The bond shall be executed to the State of Oregon in the sum of $15,000 * * * * *. It shall be approved as to form by the Attorney General, and be conditioned that the applicant, if a license is issued to him, shall conduct his business as a dealer without fraud or fraudulent representation and without violating any of the provisions of this chapter.

(2) If any person suffers any loss or damage by reason of the fraud, fraudulent representations or violation of any of the provisions of this chapter by a licensed dealer, he has a right of action against such dealer and a right of action in his own name against the surety upon the bond.

Strand's conduct in failing to pay plaintiff for the cars when they were sold amounted to fraud as that term is used in the statute and bond.

We think this case is controlled by our decision in *State v. Francis*, 152 Or 448, 54 P2d 297. In that case a dealer in securities had agreed with a customer to purchase and deliver to the customer certain stock in consideration of the delivery to the dealer of certain stock owned by the customer. The customer delivered his stock to the dealer but the dealer failed and refused to purchase and deliver the stock promised in exchange. Prior to said transaction, the dealer had filed with the Corporation Commissioner a bond conditioned as follows:

> " 'Now, THEREFORE, if the said principal, its officers, agents, employes and trustees, shall conduct and carry on its said business as a Stock and Bond Broker without fraud or fraudulent representation, and shall comply with all the requirements and provisions of said act, and acts amendatory thereof, and shall honestly and faithfully perform every undertaking and agreement entered into by it as a licensed broker under said act, and shall refrain from doing any act or thing, and from any conduct constituting improper, fraudulent or dishonest dealing, within the meaning of said act, then this obligation shall be void; otherwise to remain in full force and effect.' "

This court pointed out that the language of the bond as filed was undoubtedly broad enough to include breach of contract. The court held, however, that the statute did not authorize the Corporation Commissioner to include the faithful performance clause in the bond and that such clause was surplusage. The court said:

> "It is well established in this jurisdiction and elsewhere that the liability of a surety under a

statutory bond is measured and defined by the statute requiring the bond. Any additions to the bond not required by statute are void and may be treated as mere surplusage: State ex rel Hagquist v. United States Fidelity & Guaranty Co., 125 Or. 13 (265 P. 775); American Surety Co. of New York v. Steen, 86 Okla. 252 (208 P. 212); United States Fidelity & Guaranty Co. v. Iowa Telephone Co., 174 Iowa, 476 (156 N.W. 727); Schisel v. Marvill, 198 Iowa, 725 (197 N.W. 662); Hence, to determine the liability of the principal and surety under the bond, it is necessary to declare the statutory law applicable at the time the bond was executed."

Stripped of its surplusage, the bond in the *Francis* case required the dealer to conduct his business without fraud or fraudulent representation. The court held that the bond covered only transactions involving fraud and did not impose liability for breach of contract. The court further held that the failure of the broker to deliver the securities constituted a breach of contract.

■ This court has uniformly held that the failure to perform a promise relating to future action or conduct does not constitute fraud. In the leading case of *Dolph v. Lennon's, Inc., et al.*, 109 Or 336, 350 P 161, the court said:

"The general rule, as stated in Cerny v. Paxton & G. Co., 78 Neb. 134 (110 N.W. 892, 10 L.R.A. (N.S.) 640), is that 'fraud cannot be predicated on a promise not performed; that, to constitute actionable fraud there must be a false assertion in regard to some existing matter, by which a party is induced to part with his money or property.' The mere nonperformance of a promise made in the course of negotiations or the failure to carry out an intention expressed in the course of such negotiations is not of itself either a fraud or evidence of a fraud, in the absence of allegations and proof that the representations were falsely and fraudu-

lently made with intent to deceive; that is, that the statement of intent as to the future was made in bad faith: Adams v. Schiffer, 11 Colo. 15 (17 Pac. 21, 7 Am. St. Rep. 202). See note, 10 L.R.A. (N.S.) 641. A representation, to be fraudulent in the legal sense, must relate to a past fact or present condition, and must not be a mere promise: Casselberry v. Warren, 40 Ill. App. 626; Hartsville University v. Hamilton, 34 Ind. 506; Welshbillig v. Dienhart, 65 Ind. 94; Wheeler v. Mowers, 16 Misc. Rep. 143 (38 N.Y. Supp. 950); J. H. Clark Co. v. Rice, 127 Wis. 451 (106 N.W. 231, 7 Ann. Cas. 505), and other cases cited in note to Cerny v. Paxton, 10 L.R.A. 641 et seq."

See to the same effect *Elastic Paint & Mfg. Co. v. Johnson,* 127 Or 647, 271 P 996; *Cameron v. Edgemont Investment Co.,* 136 Or 385, 299 P 698; *Widmer et ux. v. Leffelman,* 187 Or 476, 212 P2d 737; *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 225 P2d 757; *Share v. Williams et ux.,* 204 Or 664, 277 P2d 775, 285 P2d 523; and *Kliks v. McCaffrey,* 221 Or 81, 350 P2d 417.

In the case at bar there is neither pleading nor proof that Strand's promise to pay for plaintiff's cars as he sold them was not made in good faith.

The statute requiring motor vehicle dealers to give bond was first enacted in 1927.[2] The *Francis* case was decided in 1936 and in the same year, the holding therein was approved in *Kennedy v. Fidelity & Deposit Co.,* 153 Or 646, 58 P2d 625. Since that time the statute requiring the filing of the bond has been

---

[2] Oregon Laws 1927, ch 364 § 3 (9h)

* * * * * and deliver to the secretary of state a personal or surety bond to the state of Oregon in the sum of $1,000, approved as to form by the attorney general of the state of Oregon, and conditioned that said applicant, if said license is issued to him, shall conduct his business as a dealer without fraud or fraudulent representation and without the violation of any of the provisions of this act. * * * * * (at page 496).

amended on several occasions.⑨ The penalty of the bond has been twice increased but no change has been made in the condition of the bond. Whether a more comprehensive bond should be required of motor vehicle dealers is a legislative problem.

■ This is an action at law and we are not at liberty to disturb the findings of the court as long as they are supported by substantial competent evidence. There is evidence in this case to support the findings and the judgment of the trial court is affirmed.

⑨ Oregon Laws 1937 ch 79
   Oregon Laws 1939 ch 182
   Oregon Laws 1955 ch 217
   Oregon Laws 1959 ch 328