Argued May 18, affirmed August 27,
reconsideration denied October 11,
petition for review denied December 11, 1979 (288 Or 173)

# SOUTH SEATTLE AUTO AUCTION INC.,

*Respondent,*

*v.*

# WESTERN CASUALTY AND SURETY CO.,

*Appellant.*

## (No. 100 966, CA 12296)

598 P2d 1269

Jay D. Enloe, Portland, argued the cause for appellant. With him on the brief was Vergeer, Roehr & Sweek, Portland.

Harrison R. Winston, Roseburg, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, Tanzer, Richardson, and Roberts, Judges, and Peterson, Judge Pro Tempore.

RICHARDSON, J.

## RICHARDSON, J.

Defendant, the surety of an automobile dealer, appeals from a judgment determining it is liable on the bond based on its principal's fraudulent act. The questions on appeal concern: (1) the interpretation of the automobile dealer's bond, ORS 481.305,[1] 481.310;[2]

---

[1] ORS 481.305 provided in relevant part:

"(1) Except as provided in ORS 481.312, *no person shall carry on or conduct in this state the business* of buying, selling or dealing in new or used motor vehicles, trailers or semitrailers unless he has a license from the division authorizing him to carry on or conduct such business. Such license shall be furnished annually by the division, and shall run from January 1 of each year.

"(2) Except as provided in ORS 481.312, any person desiring to carry on the business of buying, selling or dealing in new or used motor vehicles, trailers or semitrailers shall apply for a license therefor upon a form to be prescribed and furnished by the division. The application shall be verified by the applicant, and shall contain:

"* * * * *

"(3) With such application, the applicant shall:

"* * * * *

"(b) Deliver to the division a bond complying with ORS 481.310.

"* * * * *." (Emphasis added.)

[2] ORS 481.310 provides:

"(1) The bond mentioned in paragraph (b) of subsection (3) of ORS 481.305 shall have a corporate surety licensed to do business within this state. The bond shall be executed to the State of Oregon in the sum of $15,000, unless the applicant desires to engage in the business of buying, selling or dealing exclusively in motorcycles or motor bicycles, in which case the sum shall be $2,000. It shall be approved as to form by the Attorney General, and be conditioned that the applicant, if a license is issued to him, shall conduct his business as a dealer without fraud or fraudulent representation and without violating any of the provisions of this chapter.

"(2) If any person suffers any loss or damage by reason of the fraud, fraudulent representations or violation of any of the provisions of this chapter by a licensed dealer, he has a right of action against such dealer and a right of action in his own name against the surety upon the bond.

"(3) All bonds given under the provisions of paragraph (b) of subsection (3) of ORS 481.305 shall be filed and held in the office of the division. If the bond is canceled by legal notice, the license of the dealer shall be canceled immediately by the division. If the license of a dealer

(2) whether evidence of automobile dealer's subequent acts were admissible in a trial for fraud to show his fraudulent intent at the time of the transaction; and (3) whether there was clear and convincing proof of the elements necessary to establish fraud.

The undisputed facts are that on Wednesday, October 1, 1975, Barber, a Salem automobile dealer, purchased an automobile from plaintiff in Seattle, Washington. In payment, Barber gave a check to plaintiff in the sum of $4,710. At the same time, plaintiff relinquished possession of the automobile and the title; the title transfer was conditioned upon Barber's check clearing his bank in Oregon.

When Barber's bank opened on Friday morning, October 3, 1975, Barber stopped payment on the check to plaintiff.

On that same day, at the same bank, Barber negotiated a loan for $3,000, reportedly to purchase the "unsatisfactory" automobile and using the automobile as "the collateral" for the loan. On Tuesday, October 7, 1975, Barber sold the automobile to an Oregon dealer and received full payment.

Plaintiff sued defendant, Barber's surety. The court found that Barber's automobile dealer's bond, carried by defendant, was available for plaintiff's recovery. It also found plaintiff suffered a loss by virtue of Barber's fraud.

We adopt that portion of the trial court's opinion, which reads as follows:

### "AVAILABILITY OF BOND FOR PLAINTIFF'S RECOVERY

"A. Statute:

"1. 'In this state'' — Defendant contends that the bond against which Plaintiff seeks recovery is not

is not renewed or is voluntarily, or involuntarily canceled, the sureties on the bond shall be relieved from liability accruing subsequent to such cancelation by the division.

"(4) A person who violates any provision of this section commits a Class A misdemeanor."

available as a resource to Plaintiff because the bond is limited to transactions 'in this state.'

"Defendant asserts, and the Court agrees, that the liability of a surety under a statutory bond is measured and defined by the statute requiring the bond. *Butte Motor Co. v. Strand,* 225 Or 317, 320 (1960), citing *State v. Francis,* 152 Or 448, 451 (1936). In construing the statute, the Court simply is to ascertain and declare what is contained therein, not to insert what has been omitted, or to omit what has been inserted. ORS 174.010.

"Defendant contends that the bond is unavailable to Plaintiff because the qualifying statutory language 'in this state' in ORS 481.305, as it existed before amendment by the 1977 Legislature (House Bill 2388, Chapter 674, § 2, Or Laws 1977), necessarily limits recovery under the bond to transactions occurring in Oregon.

"Although the question is not free from doubt, the Court concludes that the words 'in this state' do not apply to limit the bond, but, instead, apply to the requirement that the dealer cannot <u>conduct</u> business in Oregon without a <u>license</u>. ORS 481.305(1). The requirement to have a bond is set forth in ORS 481.305(3)(b) which, in turn, requires compliance with ORS 481.310 at the time of making application for a license. ORS 481.310 neither prescribes territorial limits for the availability of the bond nor does it require that the bond be universal. Likewise, the right-of-action aspect of the statute (ORS 481.310(2)) does not contain territorially-limiting language.
"* * * * *

"To conclude that the protection of the bond is limited only to transactions occurring wholly within this state is a very narrow interpretation of the statute and results from an implication that the prohibition against conducting a business in this state without a license (ORS 481.305) necessarily limits the protection of the required bond (ORS 481.310) to the territorial limits of the state.

"The court concludes that the words 'in this state' modify the conducting of a business and do not limit the availability of the bond to transactions occurring wholly within this state.

[711]

"2. Legislative Purpose — * * * The cited legislative statement [ORS 481.075] sets forth that the purpose of certain provisions (including the provisions in question) is to provide '* * * a comprehensive system for the regulation of all motor vehicles * * * in this state.' As noted above, the Court refuses to draw from that statement that the bond is limited to the extent claimed by Defendant.

"* * * * *

"B. Bond Language:

"The language of the statute requiring the bond is controlling and any nonstatutorily required additions to the bond are void and may be treated as mere surplusage. *State v. Francis,* 152 Or 448, 451 (1936). Further, any omissions from, or narrowing of, the statute by language in the bond are not controlling. ORS 743.759.

"Acknowledging those two propositions, the Court has examined the bond herein * * * to determine whether the language in the bond, approved as to form by the Attorney General (ORS 481.310(1)) and executed by Defendant and its principal, would shed light on this controversy. The Court finds that the language in the bond is consonant with the interpretation given the statute herein and the words 'in this state' modify the need for the license and do not limit the availability of the bond.

"Actionable Fraud

"* * * * *

"B. General Applicable Law:

"Oregon Law (ORS 481.310(2)) provides that a person who suffers loss or damage by reason of the fraud, fraudulent representations, or violation of any of the provisions of ORS Chapter 481 by a licensed dealer has a right of action against the surety on the dealer's bond. * * *

"* * * * *

"C. Findings and Conclusions:

"In order for Plaintiff to recover it must prove each of the essential elements of fraud. *Conzelmann v. N.W.P.& D. Prod. Co.,* 190 Or 332, 350 (1950).

" 'The elements necessary to establish an action for fraud are: (1) a representation; (2) its falsity; (3)

[712]

its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury * * *.' *Rice v. McAlister,* 268 Or 125, 128 (1974).[3]

"The Court finds

"1. A representation — When Barber presented his check to Plaintiff he effectively represented that the check would be payable upon presentation to his bank.

"2. Its falsity — The evidence herein clearly shows that Barber, by virtue of the stop payment request, did not intend payment upon demand.

"3. Its materiality — The evidence is uncontroverted that Plaintiff would not have parted with its automobile and title thereto without the representation that the check would be honored upon presentation at the bank.

"4. Barber's knowledge of falsity — This is the most critical element in this case. As a general rule, the <u>intent to deceive</u> is a material issue and a necessary element of a fraud case. *Briscoe v. Pittman,* 268 Or 604, 607 (1974). Although it could be argued to the contrary, the law in Oregon is that without evidence of the intent to deceive at the time the representations were made, the mere nonperformance of a promise is not, of itself, fraudulent. *Dolph v. Lennon's, Inc.,* 109 Or 336, 351 (1923); *Cameron v. Edgemont Investment Co.,* 136 Or 385, 395 (1931); *Butte Motor Co. v. Strand,* 225 Or 317, 321 (1960).

"However, if the representations as to the future performance were made in bad faith or with the intent to deceive, such promises of future conduct constitute actionable fraud. *Dolph v. Lennon's, Inc.,* 109 Or 351, 352 (1923); *Kliks v. McCaffrey and Bettis,* 221 Or 81, 84 (1960); *Butte Motor Co. v. Strand,* 225 Or 317, 322 (1960). And when one promises to do

---

[3] The evidence supports a finding that all the elements of common law fraud listed in the trial court's opinion were proven. We do not decide whether the fraud or fraudulent representations set out in ORS 481.310(2) require proof of the same elements.

something in the future as an inducement to cause another to part with his property, makes the promise a deception, and at the time of the promise has no intention to perform, such promise is the same as a false representation of a past or existing fact. *Burgdorfer v. Thieleman,* 153 Or 354, 371 (1936); *Elastic Paint & Mfg. Co. v. Johnson,* 127 Or 647, 653 (1929). Even a promise made with a reckless disregard whether the promisor can or cannot perform the promise is actionable. *Sproul v. Fossi,* 274 Or 749, 752 (1976).

"As stated above, a fraudulent intent not to perform a promise may not be inferred at the time the promise is made from the mere fact of nonperformance. Other circumstances of a substantial character must be shown in addition to nonperformance before such inference of wrongdoing may be drawn. *Conzelmann v. N.W.P. & D. Prod. Co.,* 190 Or 332, 352 (1950).

"The Court concludes that the circumstances in this case (set forth above) clearly indicate that Barber embarked upon a fraudulent scheme to defraud not only Plaintiff but The Commercial Bank, as well. The Courts will not presume fraud when the transaction is equally susceptible to two explanations, one which is consistent with fraudulent intent and the other with good faith and fair dealing. *Hurford v. Harned,* 6 Or 362, 365 (1877). Here, the two explanations are not equally susceptible. When Barber's scheme is reviewed in its totality (the purchase, stop payment, immediate loan, and the subsequent sale), fraud is the obvious conclusion. This Court concludes that Plaintiff has met the burden of clear, satisfactory, and convincing proof that Barber misrepresented, in bad faith, and with the intent to deceive, his future intentions in respect of the check.

"5. Intent that it be acted upon — The evidence clearly establishes this element.

"6. Plaintiff's ignorance of the falsity — The evidence is clear Plaintiff was unaware of the intent of Barber.

"7. Reliance — It is evident that Plaintiff relied on Barber's misrepresentations.

[714]

"8. Right to rely — There is satisfactory evidence that Plaintiff had a right to rely on representations of Barber. *Galego v. Knudsen,* 282 Or 155, 160 (1978); *Johnson et ux v. Cofer,* 204 Or 142, 149 (1955).

"9. Consequent injury — There is sufficient evidence that Plaintiff suffered a direct loss in the amount of $4,710, as a result of Barber's fraud.

"The Court concludes that Plaintiff has suffered a loss by virtue of the fraud of Defendant's principal."

■ Defendant contends the court erred in receiving evidence of Barber's actions in Oregon subsequent to the purchase of the vehicle from plaintiff in Seattle. Defendant objected, on the grounds of relevancy, to the evidence that Barber stopped payment on the check, negotiated a loan with the vehicle as collateral and subsequently sold the vehicle. Defendant argues that plaintiff must establish a fraudulent intent at the time the vehicle was purchased in Seattle and that the subsequent conduct of Barber does not in any way establish fraud at that time. The argument continues that Barber could have formed a fraudulent intent between the time of the purchase in Seattle and the stop payment order in Oregon.

We disagree. The evidence is susceptible of the conclusion that Barber was engaging in one continuous course of conduct to defraud commencing with the purchase of the vehicle from plaintiff. Evidence of the fraudulent activity in Oregon, which essentially completed the transaction, is relevant to prove Barber's intent at the time he purchased the vehicle. Whether a possibility exists that he formed the fraudulent intent after the purchase of the vehicle is a matter for the trier of fact to determine. As the trial court's opinion discloses the court concluded the fraudulent intent existed at the time Barber submitted his check for payment to plaintiff. The court did not err in receiving the evidence or considering it in arriving at its decision.

Affirmed.