DUVAL MAWYER

V.

LUMBERMENS MUTUAL CASUALTY COMPANY

Record No. 870062

March 3, 1989

Present: All the Justices

300

*F. Guthrie Gordon, III (Deborah C. Wyatt; Gordon & Wyatt,* on brief), for appellant.

*Michelle Preston Wiltshire (H. Aubrey Ford, III; Browder, Russell, Morris and Butcher,* on brief), for appellee.

STEPHENSON, J., delivered the opinion of the Court.

The issue in this appeal is whether an automobile dealer's bond indemnifying against fraudulent automobile sales by a North Carolina dealer applies only to sales taking place wholly within North Carolina's borders.

Duval Mawyer brought this action against Lumbermens Mutual Casualty Company (Lumbermens) to recover on a judgment rendered against Lumbermens' insured, Carolina Car Company, by the United States District Court for the Western District of Virginia for violation of 15 U.S.C. §§ 1981 *et seq.* (the Federal Statute). Both Mawyer and Lumbermens filed motions for summary judgment, relying upon the pleadings and exhibits. Thereupon, the trial court granted summary judgment for Lumbermens, and Mawyer appeals.

The undisputed facts are derived from the pleadings and exhibits. Benny East, an individual trading as Carolina Car Company (East), was a wholesale automobile dealer licensed to do business in the State of North Carolina. As a condition of his license, East obtained from Lumbermens a bond protecting claims that might arise from fraudulent sales of motor vehicles.

The bond was issued in compliance with the North Carolina Motor Vehicle Dealers and Manufacturers Licensing Law, N.C. Gen. Stat. §§ 20-285, *et seq.* (the North Carolina Statute), and the bond specifically incorporates the North Carolina Statute. East gave the bond as principal, and Lumbermens executed it as surety.

The germane section of the North Carolina Statute provides in pertinent part that "[a]ny purchaser of a motor vehicle who shall have suffered any loss or damage by any act of a motor vehicle dealer that constitutes a violation of [Article 12, Chapter 20] shall have the right to institute an action to recover against such motor vehicle dealer and the surety." N.C. Gen. Stat. § 20-288(e) (1985). The bond, on its face, refers to the North Carolina Statute. The bond states, *inter alia,* that East and Lumbermens are "held and firmly bound unto the people of the State of North Car-

olina to indemnify any person who may be aggrieved by fraud." The bond also states that it is executed in compliance with the North Carolina Statute "to enable [East] to obtain a license from the [North Carolina] Division of Motor Vehicles."

In March 1983, Mawyer purchased a 1981 Pontiac Le Mans automobile from Herndon Chevrolet, Inc. (Herndon), in Greene County, Virginia, for $6,695. Herndon had purchased the automobile at the Fredericksburg Auto Auction (Fredericksburg), and East had sold the automobile to Fredericksburg.

When Mawyer purchased the automobile, the odometer showed 25,588 miles. Because East had tampered with the odometer, however, this reading was false. Indeed, the correct reading would have been in excess of 40,000 miles.

Consequently, in December 1983, Mawyer sued East in federal court seeking damages for the violation of the Federal Statute. On November 22, 1985, the federal court entered judgment for Mawyer in the amount of $5,767.50.

Subsequently, Mawyer filed the present action. The trial court, however, dismissed the action on the ground that "the bond in question does not apply to sales of automobiles occurring outside the State of North Carolina." In granting judgment in favor of Lumbermens, the trial court stated that there was "no evidence that the statute under which the bond was issued was intended to have any extra-territorial effect."

Since the Supreme Court of North Carolina has not passed upon the question whether the state's motor vehicle surety bonds have extra-territorial effect, we are obliged to make our own construction. Decisional law on the general subject is scant. The few courts that have addressed the issue are divided.

Some courts hold that when a state's licensing statute conditions the issuance of a license upon the execution of a surety bond, a presumption exists that the bond's application does not extend outside the issuing state. Thus, for such a bond to have extra-territorial effect, the statute must explicitly so provide. *See, e.g., State Surety Company* v. *Lensing,* 249 N.W.2d 608 (Iowa 1977); *Peerless Ins.* v. *Clark,* 29 Colo. App. 436, 487 P.2d 574 (1971); *Ore-Ida Potato Products, Inc.* v. *United Pacific Ins. Co.,* 87 Idaho 185, 392 P.2d 191 (1964). Other courts hold that, absent language in the statute or bond that explicitly limits the bond's application to intrastate transactions, the bond will be given extra-territorial effect. *See, e.g., South Seattle Auto Auction, Inc.* v.

*Western Casualty and Surety Co.*, 41 Or. App. 707, 598 P.2d 1269 (1979); *United States Fidelity & Guaranty Co. v. Colonial Baking Co.*, 220 Ark. 287, 247 S.W.2d 997 (1952).

■ In the present case, no language in either the North Carolina Statute or Lumbermens' bond explicitly limits the bond's application to North Carolina's borders. While it also can be said that the language in neither the statute nor the bond explicitly gives the bond extra-territorial effect, a fair reading of N.C. Gen. Stat. § 20-288(e) permits such an interpretation. The section grants "purchasers" the right to recover on the bond. *Triplett v. James*, 45 N.C. App. 96, 98, 262 S.E.2d 374, 375, *disc. rev. den.*, 300 N.C. 202, 269 S.E.2d 621 (1980). Moreover, the bond provides that Lumbermens is obligated "to indemnify *any person* who may be aggrieved by fraud" and to "save and keep harmless *any person* from any fraud practiced on him . . . by [East]." (Emphasis added.) Admittedly, Mawyer is both a purchaser and a person aggrieved by East's fraud.

■ The obvious purpose of the bond is to protect innocent purchasers of motor vehicles from the fraudulent acts of dealers. *Triplett*, 45 N.C. App. at 98, 262 S.E.2d at 375. Accordingly, we believe that both the statute and the bond should be construed broadly in favor of protecting the consumer and strictly against the fraudulent dealer and his surety.

■ Because neither the statute nor the bond contains any limiting language, we give the bond a broad interpretation and conclude that Lumbermens' bond applied to fraudulent sales both within and outside North Carolina's borders. The bond, therefore, afforded protection to Mawyer. Accordingly, we will reverse the trial court's judgment and enter final judgment in favor of Mawyer.

*Reversed and final judgment.*