The Honorable Christopher Graham Representative, District 112 Post Office Box 746 Jefferson City, Missouri 65102
Dear Representative Graham:
This opinion is in response to your questions asking:
 Do the motor vehicle dealer bonds required by Section 301.560, RSMo protect any aggrieved party suffering loss by the acts of the person bonded, when the grounds for the suspension or revocation of the license of the bonded person resulted from his activities occurring outside of Missouri?
 Does "any aggrieved party" as cited in the statute include licensed motor vehicle dealers and/or automobile auctions?
Senate Committee Substitute for House Committee Substitute for House Bill No. 1512, Eighty-fourth General Assembly, Second Regular Session (1988), created the "Missouri Motor Vehicle Commission" within the Department of Economic Development. The Commission is responsible for licensing all manufacturers, motor vehicle dealers and boat dealers as required by House Bill No. 1512.
Section 301.560, RSMo Supp. 1989, initially enacted by House Bill No. 1512 and amended in 1989, requires:
 301.560. Application requirements, additional — bonds, fees, signs required — license number, certificate of numbers — duplicate dealer plates, issues, fees — test driving motor vehicles, use of plates. — 1. In addition to the application forms prescribed by the commission, each applicant shall submit the following to the commission:
* * *
 (4) Every applicant as a new motor vehicle franchise dealer, a used motor vehicle dealer, a wholesale motor vehicle dealer, or boat dealer shall furnish with the application a corporate surety bond or an irrevocable letter of credit as defined in section 400.5-103, RSMo, issued by any state or federal financial institution in the penal sum of twenty-five thousand dollars on a form approved by the commission. The bond or irrevocable letter of credit shall be conditioned upon his complying with the provisions of the statutes applicable to new motor vehicle franchise dealers, used motor vehicle dealers, wholesale motor vehicle dealers and boat dealers, and the bond shall be an indemnity for any loss sustained by any person by reason of the acts of the person bonded when such acts constitute grounds for the suspension or revocation of his license. The bond shall be executed in the name of the state of Missouri for the benefit of any aggrieved party or the irrevocable letter of credit shall name the state of Missouri as the beneficiary; except, that the aggregate liability of the surety or financial institution to the aggrieved party shall, in no event, exceed the amount of the bond or irrevocable letter of credit. The proceeds of the bond or irrevocable letter of credit shall be paid upon receipt by the commission of a final judgment from a Missouri court of competent jurisdiction against the principal and in favor of an aggrieved party;
* * *
The scope of the obligation under a statutory bond is prescribed by the statute in compliance with which the bond is given. Home Indemnity Co. v. State of Missouri, 78 F.2d 391
(8th Cir. 1935). Since no Missouri appellate court has yet interpreted Section 301.560, our interpretation is guided by the language of the statute itself and the rulings of courts of other jurisdictions on similar issues.
As to your first question concerning whether Missouri's motor vehicle surety bonds have an extraterritorial effect, the few courts that have addressed similar issues are divided.
 Some courts hold that when a state's licensing statute conditions the issuance of a license upon the execution of a surety bond, a presumption exists that the bond's application does not extend outside the issuing state. Thus, for such a bond to have extra-territorial effect, the statute must explicitly so provide. See, e.g., State Surety Company v. Lensing, 249 N.W.2d 608 (Iowa 1977); Peerless Ins. v. Clark, 29 Colo. App. 436, 487 P.2d 574
(1971); Ore-Ida Potato Products, Inc. v. United Pacific Ins. Co., 87 Idaho 185, 392 P.2d 191 (1964). Other courts hold that, absent language in the statute or bond that explicitly limits the bond's application to intrastate transactions, the bond will be given extra-territorial effect. See, e.g., South Seattle Auto Auction, Inc. v. Western Casualty and Surety Co., 41 Or. App. 707, 598 P.2d 1269 (1979); United States Fidelity Guaranty Co. v. Colonial Baking Co., 220 Ark. 287, 247 S.W.2d 997
(1952).
Mawyer v. Lumbermens Mutual Casualty Company, 237 Va. 299,377 S.E.2d 401, 402-403 (1989).
In Peerless Insurance Company v. Clark,29 Colo. App. 436,487 P.2d 574 (1971), the court examined Colorado's statute requiring motor vehicle dealers to file a bond, C.R.S. 1963, 13-11-11(1). This statute provides protection for "any person" who suffers loss or damage by reason of fraudulent representations made by a licensed dealer. It was argued that the words "any person" gave the statute an extraterritorial effect. However, the court held:
 the law appears to be well settled that a statute cannot be presumed to have any extraterritorial effect. In Swift Co. v. Peterson, 192 Or. 97, 233 P.2d 216, it is stated,
 "No legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed. 50 Am. Jur., Statutes, 510 § 487; Sandberg v. McDonald, 248 U.S. 185, 39 S.Ct. 84, 195, 63 L.Ed. 200."
Id., 487 P.2d at 575.
In State Surety Company v. Lensing, 249 N.W.2d 608 (Iowa 1977), the court construed Section 322.4(7) Iowa Code 1971, requiring motor vehicle dealers to furnish a surety bond indemnifying "any person" suffering a loss caused by the dealer's failure to comply with the terms of the Iowa statutes. Following the reasoning of Peerless, supra, the court concluded "the mere use of the words `any fraud' and `any person' are insufficient to overcome the presumption" that a statute does not have an extraterritorial effect. Id.,249 N.W.2d at 611.
However, in South Seattle Auto Auction Inc. v. WesternCasualty and Surety Co., 41 Or. App. 707, 598 P.2d 1269 (1979), the court examined O.R.S. Section 481.310 providing coverage under a motor vehicle dealer bond for "any person" suffering loss or damage "by reason of the fraud, fraudulent representations or violation" of provisions of the statute. The Oregon court of appeals held the statute did have an extraterritorial effect because Section "481.310 neither prescribes territorial limits for the availability of the bond nor does it require that the bond be universal." Id.,598 P.2d at 1272.
Similarly, in Mawyer v. Lumbermens Mutual CasualtyCompany, supra, following the South Seattle decision, the Virginia Supreme Court held a North Carolina motor vehicle dealer bond covered a Virginia purchaser. The court stated: "no language in either the North Carolina Statute or Lumbermens' bond explicitly limits the bond's application to North Carolina's borders." Id., 377 S.E.2d at 403. The court concluded that N.C.Gen.Stat. Section 20-288(e) and the bond "should be construed broadly in favor of protecting the consumer and strictly against the fraudulent dealer and his surety." Id.
The decisions of Virginia and Oregon fail to address the general rule as stated in 73 Am.Jur.2d, Statutes, Section 359, Page 492:
 Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it.
Therefore, we conclude, for the reasons articulated by the courts of Iowa and Colorado, that the motor vehicle dealer bonds required by Section 301.560, RSMo Supp. 1989, do not provide coverage for activities occurring outside of Missouri.
Your second question concerns the parties covered by the motor vehicle dealer bond. In the statement of facts accompanying your question, you express concern about a decision from the Iowa Supreme Court holding that only "purchasers" are protected. Boone State Bank and Trust Co. v. WestfieldInsurance Co., 298 N.W.2d 315 (Iowa 1980). In that decision, the court concluded that Section 322.4(7) Iowa Code 1973, which required motor vehicle dealers to have a bond "indemnifying any person dealing or transacting business with said dealer" limited coverage to purchasers of motor vehicles. Id.,298 N.W.2d at 318. However, the Iowa court's decision was largely based on a 1980 amendment to the statute clarifying legislative intent by substituting "any person who buys a motor vehicle from the dealer" for the previous reference to "any person dealing or transacting business with said dealer."
Legislative intent should be ascertained from the language used, considering words in their plain and ordinary meaning.Metro Auto Auction v. Director of Revenue, 707 S.W.2d 397, 401
(Mo. banc 1986). Section 301.560, RSMo Supp. 1989, states that the motor vehicle dealer's bond is to be "for the benefit ofany aggrieved party" (Emphasis added.). Therefore, any party aggrieved as a result of dealings with a licensed motor vehicle dealer, including licensed motor vehicle dealers and automobile auctions as well as purchasers, would be protected by the bond.
CONCLUSION
It is the opinion of this office that (1) motor vehicle dealer bonds required by Section 301.560, RSMo Supp. 1989, do not provide coverage for activities occurring outside the State of Missouri; and (2) "any aggrieved party" as used in Section301.560, RSMo Supp. 1989, includes licensed motor vehicle dealers and automobile auctions as well as purchasers.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General