This Court granted the petition of Old Republic Surety Company ("Old Republic") for a writ of certiorari to review the judgment of the Court of Civil Appeals affirming a summary judgment entered by the Marshall Circuit Court in favor of Auction Way Sales, Inc. ("Auction Way"). The trial court held that the Alabama Automobile Dealer Bond Statute, Ala. Code 1975, §40-12-398, required Old Republic to indemnify Auction Way for losses sustained by Auction Way in connection with the sale of eight automobiles in Chicago, Illinois, to a licensed Alabama automobile dealer. Old Republic appealed, contending that the trial court erred in determining that it was liable to Auction Way, because, Old Republic argues, § 40-12-398 cannot apply to transactions outside the State of Alabama. The Court of Civil Appeals affirmed the summary judgment, holding that the bond requirement in § 40-12-398 provides a remedy that is not limited to in-state parties. Old Republic Sur. Co. v. Auction Way Sales, Inc., [Ms. 2960832, December 5, 1997] 733 So.2d 878
(Ala.Civ.App. 1997). Because we hold that requiring Old Republic to indemnify Auction Way does not require the extraterritorial application of § 40-12-398, we conclude that the trial court properly held that Old Republic must indemnify Auction Way to the extent of the dealer bond.
 I.
The evidence tends to show that Rickey Harrell is a licensed Alabama automobile dealer. Old Republic, a Wisconsin stock insurance corporation licensed to do business in Alabama, issued a used-motor-vehicle-dealer bond to Harrell pursuant to § 40-12-398. In April 1996, during the effective term of the bond, Harrell traveled to Chicago, Illinois, and purchased from Auction Way, a wholesale automobile dealer, eight automobiles worth approximately $47,000. Harrell paid Auction Way with checks and drafts that were later returned because of insufficient funds.
In July 1996, Auction Way sued Harrell, individually and d/b/a Double Diamond Motors, and Old Republic, alleging breach of contract and fraud based on Harrell's failure to pay for the automobiles he had purchased at the Chicago auction. In December, Old Republic moved for a summary judgment, arguing that §40-12-398 applies only to transactions occurring in Alabama and, thus, does not apply to Harrell's contract, which was executed in Illinois. In January 1997, Auction Way moved for a summary judgment, arguing that Old Republic, as surety, must indemnify it because Harrell's dealer bond was in effect at the time of the April 1996 transaction. The trial court entered a summary judgment in favor of Auction Way, holding that when an aggrieved party has recovered a judgment for any loss on an automobile sale and that loss is caused by a bonded Alabama used-car dealer, §40-12-398 requires that the surety pay the loss, to the extent of the bond.
In April 1997, Auction Way obtained a default judgment against Harrell (individually and d/b/a Double Diamond Motors) in the sum of $49,931.30, plus costs. The Court of Civil Appeals affirmed the trial court's holding that Old Republic must indemnify Auction Way, to the extent of the dealer bond. This Court granted Old Republic's petition for the writ of certiorari, to consider whether Auction Way's recovery under the statute is an impermissible extraterritorial application of the statute. *Page 883 
 II.
Old Republic argues that the trial court erred in holding that it must indemnify Auction Way because, it contends, such a holding impermissibly permits the extraterritorial application of § 40-12-398,[1] which provides:
 "Annually, before any license shall be issued to a new motor vehicle dealer, used motor vehicle dealer, motor vehicle reconditioner, motor vehicle rebuilder, or motor vehicle wholesaler, the applicant shall either deliver to the commissioner a good and sufficient surety bond, executed by the applicant as principal and by a corporate surety company qualified to do business in the state as surety, in the sum of $25,000 for a new motor vehicle dealer and $10,000 for all other dealers. Such bond shall be in a form to be approved by the commissioner, and shall be conditioned that the motor vehicle dealer, motor vehicle reconditioner, motor vehicle rebuilder, or motor vehicle wholesaler shall comply with the conditions of any contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of law relating to the conduct of the business for which he is licensed. Such bond shall be payable to the commissioner and to his successors in office, and shall be in favor of any person who shall recover any judgment for any loss as a result of any violation of the conditions hereinabove contained. Such bond shall be for the license period, and a new bond or proper continuation certificate shall be delivered to the commissioner at the beginning of each license period; provided, that the aggregate liability of the surety in any one license year shall, in no event, exceed the sum of such bond. The provisions of this section shall not apply to motor vehicle dealers or wholesalers who [held] a valid motor vehicle dealer license under Section 40-12-51 or to motor vehicle rebuilders or reconditioners, as defined in this article who [held] a valid business license to engage in such business as of April 1, 1978."
(Emphasis added.)
The Court of Civil Appeals stated that a fair reading of §40-12-398 requires that an automobile dealer have a bond before doing business in Alabama. Relying on South Seattle Auto Auction, Inc. v. Western Cas. Sur. Co., 41 Or. App. 707, 711,598 P.2d 1269, 1272 (1979), the Court of Civil Appeals stated that "[t]he mere requirement of a bond by no means prescribes territorial limitations on its availability nor does it require the bond to be universal."[2] Old Republic Sur. Co. v. *Page 884 
Auction Way Sales, Inc., 733 So.2d at 880. The Court of Civil Appeals concluded that "the legislature intended for the bond requirement of §40-12-398 to serve as a remedy" for "`any person who shall recover any judgment for any loss as a result of any violation of the conditions . . . contained [in the statute].'" Id. at 881. The Court of Civil Appeals further recognized that the statute specifically limits its application by providing that it does not apply to "motor vehicle dealers or wholesalers who hold a valid motor vehicle license under Section 40-12-51 or to motor vehicle rebuilders or reconditioners . . . who [held] a valid business license to engage in such business as of April 1, 1978," Ala. Code 1975, § 40-12-398. See id. The Court of Civil Appeals held that, because the express limitations found in the statute do not include territorial limitations, the words of § 40-12-398, given their plain meaning, require Old Republic to indemnify Auction Way for Harrell's breach of contract. See Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala. 1996) ("Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.").
To this Court, Old Republic argues that the Court of Civil Appeals failed to address the general rule of statutory construction explained in 73 Am. Jur. 2d Statutes § 359 (1974):
 "Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus, an extraterritorial effect is not to be given statutes by implication. Accordingly, a statute is prima facie operative only as to persons or things within the territorial jurisdiction of the lawmaking power which enacted it. These rules apply to a statute using general words, such as `any' or `all,' in describing the persons or acts to which the statute applies. They are also applicable where the statute would be declared invalid if given an interpretation resulting in its extraterritorial operation."
(Emphasis added.) (Footnotes omitted.) Although this Court has not addressed the territorial application of § 40-12-398,[3]
this Court appears to follow the general rule of statutory construction that, in order to have extraterritorial effect, a statute must explicitly provide for that effect. See, e.g., Ex parte Welch, 519 So.2d 517, 519 (Ala. 1987) (stating that "there is no reason to read § 32-6-7(3) [the driver's-license statute] as incorporating extraterritorial revocations, *Page 885 
which are entirely outside the control of the legislature of this state"); Lide v. Parker's Ex'r, 60 Ala. 165, 169-70 (1877) (stating that a statute dealing with "any property which has been fraudulently transferred" was limited to "property within the State of Alabama").
Despite the limitations on the operation of Alabama statutes, Old Republic's contention that the statute cannot operate as to a transaction that took place out of state is misplaced. This is not a case where the enforcement of the statute would impose a burden based on a noncitizen of Alabama or would impose upon a party a burden based upon a right or claim that did not vest while the party was in Alabama.[4] Old Republic is a corporation qualified to do business in Alabama.[5] It agreed to insure those who dealt with Harrell, by issuing a dealer bond made payable to the State of Alabama. Although the statute may depend on an out-of-state transaction, it operates only on an in-state dealer bond. The statute simply provides that if a dealer does not comply with certain requirements, that dealer's bond shall be payable in favor of any person who recovers a judgment against the dealer for his failure to comply with those requirements. Thus, the statute operates as to an in-state dealer bond, the payment of which depends on the dealer's compliance with a contract that is executed either in or out of state. The burden imposed by §40-12-398 was based upon a right that vested when Auction Way obtained the default judgment against Harrell. At that time, Harrell's dealer bond was located in Alabama, and Old Republic was qualified to do business in Alabama. Accordingly, requiring Old Republic to indemnify Auction Way to the extent of Harrell's dealer bond does not present a question of the extraterritorial application of a statute.[6]
 III.
Auction Way recovered a judgment for losses caused by the failure of a bonded Alabama used-car dealer to comply with *Page 886 
the terms of a contract for the sale of eight automobiles. Permitting Auction Way to recover on Harrell's dealer bond does not require the extraterritorial application of § 40-12-398; therefore, the Court of Civil Appeals properly affirmed the trial court's judgment holding that Old Republic must indemnify Auction Way.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Kennedy, Cook, Lyons, Brown, and Johnstone, JJ., concur.
[1] Old Republic further contends that even if the statute does have extraterritorial effect, the statute was created to protect consumers, not experienced automobile wholesale dealers such as Auction Way. The basis for this contention is that § 40-12-398
states that the "motor vehicle dealer . . . shall comply with the conditions of any contract made by such dealer in connection with the sale or exchange of any motor vehicle." (Emphasis added.) Even though the words of the statute do not appear to require a sale or exchange by a licensed dealer — but only a contract by a licensed dealer "in connection with" a sale or exchange, Old Republic contends that because the transaction with Auction Way involved a sale to a licensed dealer rather than a sale or exchange by a licensed dealer, the statute, by its terms, does not apply. Although courts of other jurisdictions have interpreted similar statutes to apply only to consumer sales, see, e.g., Chrysler Credit Corp. v. United States Fidelity Guar. Co.,543 So.2d 642, 644 (La.Ct.App. 1989), Old Republic concedes that this specific argument does not appear in the record below. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992) (citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala. 1991)).
[2] Old Republic argues that the territorial limitations are inherent because the dealer bond is part of Harrell's dealer license, which licenses Harrell only as a dealer in Alabama. Thus, Old Republic contends that the bond should apply only to intrastate transactions. However, it is undisputed that it is common industry practice to permit dealers licensed in one state to participate in dealer auctions in any state. Moreover, Harrell was actually permitted to participate in the out-of-state auction. Therefore, the license appears to enable Alabama dealers to transact business outside Alabama, and the bond, in turn, aids the State of Alabama in protecting a legitimate interest: the prevention of fraud by its licensed dealers.
[3] Both Old Republic and Auction Way acknowledge that jurisdictions that have addressed statutes similar to § 40-12-398
are divided as to whether a state's automobile-dealer-bond statute applies to activities that take place outside the state. Compare Peerless Ins. Co. v. Clark, 487 P.2d 574, 575 (Colo.App. 1971) ("`No legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed.'"), with Mawyer v. Lumbermens Mut. Cas. Co., 237 Va. 299, 302,377 S.E.2d 401, 403 (1989) (stating that a fair reading of North Carolina's automobile-dealer-bond statute permitted the interpretation that the "bond applied to fraudulent sales both within and outside North Carolina's borders"), and Ferris v. Haymore, 967 F.2d 946, 950-51 (4th Cir. 1992) ("Neither the language of the statute nor that of the bond permits an interpretation that would confine the surety's obligation to in-state residents.").
[4] This Court has stated:
 "[I]f a right or claim against some person becomes vested under the laws of a state while he is in the state and it is transitory, it accompanies the debtor into another state if he goes there and may be subject to suit there, but a state law does not reach into another state except as it goes with the debtor, and does not operate upon him in another state so as to put upon him there a personal burden."
Atkins v. Curtis, 259 Ala. 311, 316, 66 So.2d 455, 459 (1953). Similarly, 73 Am. Jur. 2d Statutes § 357 (1974) states:
 "[T]he general rule is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction. A statute may thus be valid insofar as it relates to persons or things within the jurisdiction although it is invalid insofar as it relates to persons and things outside the jurisdiction. However, a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries."
(Footnotes omitted.)
[5] Corporations, like citizens, are subject to the laws of Alabama. See Ala. Code 1975, § 10-2B-3.01 ("Corporations may be organized under this chapter for any lawful purpose or purposes."); Jackson Sec. Inv. Co. v. State, 241 Ala. 288, 292,2 So.2d 760, 764 (1941) ("[A] corporation is a citizen, resident or inhabitant of the state under whose laws it was created. . . ."). This applies equally to foreign corporations qualified to do business in Alabama. See Ala. Code 1975, § 10-2B-15.05(b) ("A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and except as otherwise provided by this chapter is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.").
[6] Moreover, this statute does not present the potential "clash" between the laws of separate sovereigns, against which clash the presumption against extraterritoriality is meant to protect. See EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248
(1991) (stating that the presumption against extraterritoriality "serves to protect against unintended clashes between [the] laws [of separate sovereigns]."). Old Republic fails to suggest how the enforcement of § 40-12-398 might create such a clash in this situation, and we find none.